Barbara J. CASON, Plaintiff,

v.

CONOCO PIPELINE COMPANY, a Delaware Corporation, and Randy D. Vaught, d/b/a Vaught Tree Service, and Gale Vaught, d/b/a Vaught Tree Service, Defendant.

No. 02–CV–836–H(J).

United States District Court, N.D. Oklahoma.

Aug. 18, 2003.

Leonard Marion Logan, IV, Logan & Lowry, Vinita, Bobby Christopher Ramsey, Tommy Ray Dyer, Jr, Davis & Thompson, Jay, for Barbara J Cason, plaintiff.

Gary W Davis, Crowe & Dunlevy, Oklahoma City, Gerald Lee Jackson, Crowe & Dunlevy, Tulsa, Brian Henderson, Stigler, for Conoco Pipeline Company, Sued as: Conoco Pipe Line Company, a Delaware Corporation, defendant.

## ORDER

HOLMES, District Judge.

This matter comes before the Court pursuant to the Report and Recommendation filed by Magistrate Judge Sam A. Joyner on July 3, 2003 (Docket No. 61) addressing Defendants' Motion For Stay Of Proceed-ings And For Order Compelling Arbitration (Docket No. 26), filed April 3, 2003.

In their motion, Defendants request that the present action be stayed and all claims submitted to arbitration. Defendants rely on an arbitration clause contained in an easement governing the real property in dispute in this case. Plaintiffs, however, argue that the arbitration provision does not contemplate the present claims and therefore does not compel arbitration of such claims under either the Federal Arbitration Act, 9 U.S.C. §§ 1–16, or the Oklahoma Uniform Arbitration Act, 15 Okla. Stat. §§ 801–18.

In accordance with 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b), any objections to the Magistrate Judge's Report and Recommendation must be filed within ten (10) days of the receipt of the report. The time for filing objections to the Report and Recommendation has expired, and no objections have been filed.

Based on a review of the Report and Recommendation of the Magistrate Judge, the Court hereby adopts and affirms the Report and Recommendation. Accordingly, Defendants' Motion For Stay Of Proceedings And For Order Compelling Arbitration is hereby granted in part and denied in part, as specifically set forth in the Report and Recommendation.

The Court directs the parties to file a joint statement on how best to proceed in light of the Court's ruling no later than August 25, 2003.

IT IS SO ORDERED.

## TABLE OF CONTENTS

I.   PROCEDURAL HISTORY .............................................1313

II.  FACTUAL BACKGROUND ...........................................1313

III. ANALYSIS ......................................................1314

A. THE FEDERAL ARBITRATION ACT AND THE OKLAHOMA
   UNIFORM ARBITRATION ACT.....................................1314
B. THE EXISTENCE OF AN AGREEMENT TO ARBITRATE ............1316
C. THE ENFORCEABILITY OF THE ARBITRATION AGREEMENT ......1316
   1. ASSIGNABILITY UNDER CONTRACT LAW .......................1316
   2. PROPERTY LAW ANALYSIS: COVENANT RUNNING WITH
      THE LAND ..............................................1318
D. DEFENDANT DID NOT WAIVE ITS RIGHT TO ENFORCE THE
   ARBITRATION AGREEMENT.....................................1320
   1. SIX–FACTOR TEST FOR DETERMINING WHETHER DEFEN-
      DANT'S AFFIRMATIVE ACTS CONSTITUTED A WAIVER
      OF ITS RIGHT TO ENFORCE THE ARBITRATION AGREE-
      MENT .................................................1320
      (A) WHETHER CONOCO'S ACTIONS WERE INCONSISTENT
          WITH THE RIGHT TO ARBITRATE .....................1321
      (B) WHETHER ARBITRATION WAS RAISED ONLY AFTER
          SIGNIFICANT PREPARATION FOR LITIGATION ..........1321
      (C) WHETHER THE TRIAL DATE IS NEAR OR CONOCO HAS
          DELAYED RAISING THE ISSUE OF ARBITRATION .......1322
      (D) WHETHER CONOCO HAS FILED PLEADINGS IN THE
          LITIGATION WITHOUT SEEKING A STAY OF
          PROCEEDINGS.....................................1322
      (E) WHETHER CONOCO HAS ENGAGED IN DISCOVERY
          PROCEEDINGS UNAVAILABLE IN ARBITRATION OR
          PARTICIPATED IN OTHER IMPORTANT INTERVEN-
          ING STEPS ......................................1323
      (F) WHETHER PLAINTIFF HAS BEEN PREJUDICED BY
          CONOCO'S DELAY IN ASSERTING A RIGHT TO
          ARBITRATE ......................................1323
   2. CONOCO DID NOT FAIL TO SATISFY THE CONDITION
      PRECEDENT TO ENFORCE THE ARBITRATION
      AGREEMENT............................................1324
E. MOTION TO STAY SHOULD NOT BE DENIED ON THE GROUNDS
   IT WOULD RESULT IN "PIECEMEAL" LITIGATION OF
   CLAIMS AGAINST DEFENDANTS GALE AND RANDY VAUGHT....1325
F. WHETHER THE ARBITRATION AGREEMENT GOVERNS ALL
   OF PLAINTIFF'S CLAIMS ....................................1326
   1. WHETHER "EASEMENT CLEARING" IS COVERED BY THE
      ARBITRATION PROVISION ..............................1326
   2. NARROW VERSUS BROAD ARBITRATION PROVISION: GEO-
      GRAPHIC BOUNDARY AND TYPE OF DAMAGES ISSUES....1327
      (A) TRESPASS CLAIM .................................1328
      (B) INVERSE CONDEMNATION CLAIM .....................1329

IV. RECOMMENDATION .............................................1330

V. OBJECTIONS..................................................1330

### REPORT AND RECOMMENDATION

JOYNER, United States Magistrate Judge.

Plaintiff Barbara Cason ("Cason") brought an action against Conoco for trespass, inverse condemnation, and wrongful removal of trees resulting from damages sustained to trees and vegetation on her land after Conoco, through a contractor Vaught Tree Service, performed "easement clearing activities" to maintain its right-of-way. Plaintiff subsequently amended her complaint to add Randy D. Vaught and Gale Vaught, d/b/a Vaught Tree Service ("Vaughts"). Defendant Co-

noco Pipeline Company ("Conoco") filed a Motion for a Stay of Proceedings and for Order Compelling Arbitration on April 3, 2003. [Doc. No. 26–1, 26–2].

The undersigned United States Magistrate Judge held a hearing on the motion on June 10, 2003. Plaintiff appears by and through her attorney Leonard M. Logan IV. Defendant Conoco appears by and through its attorneys Gary W. Davis and Brian C. Henderson. Defendants Gale and Randy Vaught appear by and through their attorney Douglas E. Stall. Having heard the arguments of counsel, having reviewed the pleadings in the case, and having reviewed the parties' briefs and exhibits, the undersigned United States Magistrate Judge recommends that Defendant Conoco's Motion for Stay of Proceedings and for Order Compelling Arbitration be **GRANTED IN PART AND DENIED IN PART.** [Doc. No. 26–1, 26–2].

## I. PROCEDURAL HISTORY

Plaintiff Cason filed a Petition on October 11, 2002, in Craig County District Court. [Doc. No. 1]. Defendant Conoco subsequently removed the case to the District Court for the Northern District of Oklahoma on November 4, 2002. [Doc. No. 1]. Conoco submitted its Answer on November 8, 2002. [Doc. No. 4]. Plaintiff filed a First Amended Complaint on February 4, 2003, adding Vaught Tree Service as a defendant in the action. [Doc. No. 15]. Conoco submitted its Answer to Plaintiff's First Amended Complaint February 13, 2003. [Doc. No. 16]. Plaintiff

thereafter filed a Second Amended Complaint terminating Defendant Vaught Tree Service and adding Randy D. Vaught, d/b/a Vaught Tree Service, as a defendant March 24, 2003. [Doc. No. 23]. Conoco filed a Motion to Stay the Proceedings and for an Order Compelling Arbitration on April 3, 2003. [Doc. No. 26–1, 26–2]. Conoco filed an Answer to Plaintiff's Second Amended Complaint April 4, 2003. [Doc. No. 27]. Plaintiff filed a response in opposition to Conoco's motion to stay and to compel arbitration on April 21, 2003. [Doc. No. 32]. Conoco submitted its reply May 5, 2003. [Doc. No. 36]. Plaintiff filed a Third Amended Complaint on June 11, 2003, adding Gale Vaught, d/b/a Vaught Tree Service, as a defendant. [Doc. No. 53]. Gale Vaught filed her Answer to Plaintiff's Third Amended Complaint June 13, 2003. [Doc. No. 54]. Conoco submitted its Answer to Plaintiff's Third Amended Complaint June 23, 2003. [Doc. No. 56]. By minute order dated April 18, 2003, the District Court referred Defendant Conoco's Motion to Stay Proceedings and for an Order Compelling Arbitration to the undersigned United States Magistrate Judge for Report and Recommendation. [Doc. No. 30]. The undersigned held a hearing on the motion June 10, 2003.

## II. FACTUAL BACKGROUND

Plaintiff Barbara Cason ("Cason") is the owner in fee simple title of a tract of land located in the W/2 SW/4 S30–T24N–R21E in Craig County, Oklahoma ("Subject Property"), consisting of approximately seventeen (17) acres.[1] Defendant Conoco

---

1. The full legal description of the Subject Property is as follows:
Lots Three (3) and Four (4) (otherwise described as the West Half of the Southwest Quarter) (W/2 SW/4) of Section Thirty (30), Township Twenty-four (24) North, Range Twenty-one (21) East of Indian Meridian, according to the United States Government Survey thereof, LESS AND EXCEPT THE North 417.4 feet to the West 417.4 feet of Lot Three (3); and LESS AND EXCEPT the South 150

feet of the North 567.4 feet of Lot Three (3); and LESS AND EXCEPT a tract beginning North 00 04′29″ East 1505.49 feet to the Southwest Corner of Section Thirty (30); thence continuing North 00 04′29″ East 454.51 feet along the West line of said Section Thirty (30), thence North 89 28′18″ East 1150.16 feet; thence South 00 00′03″ West 454.51 feet, thence South 89 28′16″ West 1150.31 feet to the point of beginning. [Doc. No. 23, Second Amended Complaint at ¶ 1].

is a successor to the rights under an easement dated May 13, 1930 for the laying of petroleum pipelines across the Subject Property. Pursuant to the easement, Conoco's predecessor, Ajax Pipe Line Company ("Ajax"), laid two ten-inch pipelines. Conoco presently operates the pipelines, utilizing one to transport crude oil and the second to transport petroleum products.

On August 29, 2002, Conoco notified Cason in writing that it would be performing "right of way clearing/mowing" scheduled for the week of September 2, 2002. Conoco noted it would be clearing/mowing "approximately 50 feet centered over the pipeline." [Doc. No. 36, Ex. A, Letter from Jeff Bute, Conoco Right of Way Agent, to Barbara Cason]. Conoco contends the easement clearing activities were necessary to maintain the operation of its pipelines and to provide for more visibility for fly-over inspections, protection from tree root interference, and create sufficient space for necessary maintenance or repair activities. [Doc. No. 26]. Conoco contracted with Vaught Tree Service to perform the easement clearing activities. As a result of the clearing activities, Plaintiff Cason claims that her trees and vegetation were damaged and/or removed. Plaintiff filed suit on October 11, 2002, asserting claims against Conoco for wrongful removal of trees, trespass, and inverse condemnation. [Doc. No. 1].

Conoco contends that the court proceedings should be stayed and an order compelling arbitration be entered based upon the arbitration provision contained in the easement recorded on the Subject Property, which Conoco insists provides for the exclusive procedure governing this dispute. The easement contains a provision providing the procedure for "damage to crops, fences and timber, which may arise from laying, maintaining, operating or removing such pipe lines." Specifically, the arbitra-

tion clause describes the procedure as follows:

> Said damage, if not mutually agreed upon, to be ascertained and determined by three disinterested persons; one to be appointed by the undersigned her heirs or assigns; one by the Grantee, its successors or assigns, and the third by the two persons aforesaid, and the award of such three persons, or any two of them, shall be final and conclusive.

[Doc. No. 26, Ex. A, easement]. Conoco additionally contends that the parties were unable to reach an agreement concerning the damage prior to Plaintiff's filing of this action.

## III. ANALYSIS

### A. THE FEDERAL ARBITRATION ACT AND THE OKLAHOMA UNIFORM ARBITRATION ACT

■ Defendant Conoco moves for a stay of the court proceedings in this action and for an order compelling arbitration based on the arbitration provision in the recorded easement on the Subject Property. Because the easement contains a provision for arbitration, the undersigned must determine the propriety of staying the current court proceedings and compelling arbitration upon an examination of the law governing arbitration of disputes, primarily the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, and the Oklahoma Uniform Arbitration Act ("OUAA"), 15 Okla. Stat. §§ 801–818.

Both federal and state law evidence a strong public policy favoring arbitration of disputes. *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998). *See also Rollings v. Thermodyne Indus., Inc.*, 910 P.2d 1030, 1033 (Okla.1996) ("Arbitration allows for speedy and less costly resolution of conflicts."). Although the present action is a diversity case in which a federal court

generally applies state substantive law, the OUAA is in accord with the FAA. *See* 15 Okla. Stat. §§ 801–818. More importantly, however, the Tenth Circuit has recognized that the FAA preempts state law, even in diversity cases, where the arbitration clause is in "a contract evidencing a transaction involving commerce ... among the several states." *See* 9 U.S.C. §§ 1 & 2. *See also Foster v. Turley*, 808 F.2d 38, 40 (10th Cir.1986) ("If Arbitration Act is applicable, federal law governs enforcement of and challenges to arbitration award, even in diversity cases.") (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401–05, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). In *Foster*, the Tenth Circuit noted that "Congress enacted the Arbitration Act to ensure that the courts uphold privately made agreements to arbitrate.... Contracts to arbitrate are not to be undermined by allowing one party to ignore the contract and resort to the courts." *Foster*, 808 F.2d at 41–42 (citations omitted).

Thus, the FAA creates a "body of substantive federal law on arbitration governing any agreement within the Act's coverage." *Id.* at 40. The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*See* 9 U.S.C. § 3. Accordingly, the elements necessary to invoke the stay provision of the FAA and compel a controversy to arbitration are as follows:

(1) An agreement in writing for arbitration;

(2) A contract evidencing a transaction involving commerce among the several states;

(3) An issue referable to arbitration and the court's satisfaction that the issue involved is referable to arbitration under the agreement;

(4) An application by one of the parties to stay the proceedings; and

(5) The applicant for a stay of proceedings is not in default with such arbitration.

*See* 9 U.S.C. §§ 1–3.

The OUAA similarly applies to a "written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties." *See* 15 Okla. Stat. § 802 ("Such agreements are valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract."). Under OUAA § 803, the court shall order the parties to proceed with arbitration "[o]n application of a party ..., and the opposing party's refusal to arbitrate." 15 Okla. Stat. § 803.

Applying the factors for determining whether a stay should be imposed and the matter submitted to arbitration under the FAA, the undersigned finds that an agreement in writing for arbitration exists. The arbitration provision contained in the easement recorded on the Subject Property provides, in writing, the exclusive procedure for resolving controversies relating to damage to crops, fences, and timber. [Doc. No. 26, Ex. A, easement]. This agreement was entered into by the owner of the property (grantor) and Conoco's predecessor Ajax (grantee) on May 13, 1930.

■ Second, the agreement evidences a transaction involving commerce among the several states. Ajax Pipe Line Company, a Delaware corporation (its successor in interest now Conoco, a Delaware corporation) contracted with the owner of the property, a resident of Oklahoma. The transaction involved the installation of two pipelines for the purposes of transporting crude oil and petroleum products. The requirement that the underlying transaction involve commerce is "broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause." *See Foster,* 808 F.2d at 40. Accordingly, under the liberal framework for determining whether a transaction involves interstate commerce, the undersigned finds that the agreement evidences an interstate commercial transaction.

The third factor requiring that the issue be referable to arbitration, and the Court's satisfaction that the issue involved is referable to arbitration under the agreement, will be analyzed below in the undersigned's examination of whether the arbitration agreement covers the type of damages claimed by Plaintiff.

Conoco has satisfied the fourth requirement of the FAA stay provision by moving the Court to stay the proceedings and for an order compelling arbitration filed April 3, 2003. [Doc. No. 26–1, 26–2]. The fifth factor mandating that the applicant for a stay of proceedings not be in default with such arbitration will be examined below in the undersigned's discussion as to whether Conoco waived its right to enforce arbitration.

### B. The Existence Of An Agreement To Arbitrate

Plaintiff asserts that no agreement to arbitrate exists. Defendant Conoco counters and points to the arbitration provision contained in the easement recorded on the Subject Property, which provides the procedure for resolving disputes over "damage to crops, fences and timber, which may arise from laying, maintaining, operating or removing such pipe lines." The procedure is described as follows:

> Said damage, if not mutually agreed upon, to be ascertained and determined by three disinterested persons; one to be appointed by the undersigned her heirs or assigns; one by the Grantee, its successors or assigns, and the third by the two persons aforesaid, and the award of such three persons, or any two of them, shall be final and conclusive.

[Doc. No. 26, Ex. A, easement]. The agreement was entered into by the owner of the property (grantor) and Conoco's predecessor Ajax (grantee) on May 13, 1930. The undersigned finds that an agreement in writing for arbitration clearly exists in the recorded easement on the Subject Property.

### C. The Enforceability Of The Arbitration Agreement

Plaintiff asserts that, even if an agreement to arbitrate exists, the agreement is not enforceable. Plaintiff compares the arbitration agreement to a personal contract, which is generally binding only on the parties to the agreement. Defendant Conoco contends that the agreement to arbitrate does not involve personal qualities or services of the parties and, as such, is assignable. The undersigned finds that, under both general contract law and property law, the easement containing the agreement to arbitrate is assignable because it is not a personal contract and, alternatively, constitutes a real covenant that runs with the land.

### 1. Assignability under Contract Law

■ Plaintiff argues that the arbitration agreement contained in the easement

on the Subject Property is not generally assignable and, therefore, not enforceable against Plaintiff who was not a party to the 1930 agreement. Plaintiff classifies the 73–year old arbitration agreement as an adhesion-type contract. While Plaintiff concedes that the easement, as a recorded instrument, runs with the land and affects the title to the property, Plaintiff maintains that the arbitration provision does not bear upon the title and is, at most, a personal covenant between the original contracting parties. Personal contracts general bind only the original parties to the agreement. *See Federated Title Insurers, Inc. v. Ward,* 538 So.2d 890, 891 (Fla.App.1989). Conversely, Conoco argues that the agreement is not a personal contract and is freely assignable.

Oklahoma courts have recognized a presumption of assignability for rights under a contract unless the parties expressly provide otherwise. *See Beattie v. State, ex rel. Grand River Dam Auth.,* 41 P.3d 377, 381 (Okla.2002) (citing *Restatement (Second) of Contracts* § 317). In *Beattie,* the Oklahoma Supreme Court examined the assignability of utility easements transferred through the execution of a quitclaim deed. The Court noted that "[w]hen interests in or rights to property are created by deed, the deed should be interpreted and [the] meaning of the parties thereto ascertained in the same manner as govern other written contracts." *Id.* at 380. The Court further found that "Oklahoma has long held that rights under a contract are presumed to be assignable, unless the parties expressly provide otherwise." *Id.* at 381.

A recognized exception to the presumption of assignability of contract rights is the case in which the personal qualities of the parties to the contract are material to the contract, and the assignment would constitute a material change in the terms of the contract. *Id.* at 381.[2] "Oklahoma case law has also recognized that certain rights and duties under a contract are too personal in character to permit them to be assigned." *Beattie,* 41 P.3d at 381. Examples of duties "too personal in character" to permit assignment of a contract include contracts for personal services requiring the exercise of knowledge, judgment, or skill, such as: a contract to furnish an abstract of title; a contract to render professional services as a physician, lawyer, or architect; a contract for maintenance and support; and a contract of entrustment of funds or property of another. *Id.* at 381–82 n. 4.

The easement on the Subject Property contained an agreement to arbitrate disputes involving damage to crops, fences, and timber arising from various actions concerning the pipelines. The original contracting parties apparently contemplated the assignment of the easement and the arbitration provision, evidenced by language that the three disinterested arbitrators would be chosen by the "undersigned her heirs or assigns" and the "[g]rantee, its successors or assigns." [Doc. No. 26, Ex. A, easement]. *See also Martin v. City of O'Fallon,* 283 Ill.App.3d 830, 219 Ill.Dec. 350, 670 N.E.2d 1238, 1241 (1996) ("As a general rule, where the right is assignable, any language that demonstrates the intent to transfer some identifiable property from one party to another for valuable consideration is sufficient to establish an assignment."). A valid assignment instills upon the assignee the same rights, remedies, and benefits possessed by the assignor.

---

**2.** The Restatement (Second) of Contracts § 317(2)(a) provides, in part: "A contractual right can be assigned unless: (a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him. . . ."

*See Nissan Motor Acceptance Corp. v. Ross,* 703 So.2d 324, 325 (Ala.1997).

Most importantly, the agreement to arbitrate is not a contract involving the personal services or personal qualities of any of the original contracting parties such that an assignment would materially alter the terms or conditions of the contract. Therefore, the personal contract exception to the general presumption of assignability of contract rights is not implicated in this case. At the June 10, 2003 hearing, Plaintiff's counsel basically conceded the assignability of the agreement to arbitrate in stating that he could accept that the arbitration clause is assignable. The undersigned finds that the agreement to arbitrate contained in the easement is assignable under general contract law and Oklahoma's presumption of assignability of contracts not involving the personal qualities or services of the parties.

### 2. *Property Law Analysis: Covenant Running with the Land*

An alternative analysis for determining whether the arbitration provision is enforceable against Plaintiff involves employing the property law concept of covenants running with the land. Defendant Conoco briefly notes that the arbitration clause affects the method for recovery of damage to crops, fences, and timber, and thus "touches and concerns the land" as required for a covenant to run with the land. The undersigned finds that the arbitration provision within the recorded easement on the Subject Property satisfies the requirements of a covenant running with the land and is enforceable against Plaintiff.

While the majority of the Oklahoma Supreme Court analyzed the assignability of utility easements in a quitclaim deed under general contract law principles in *Beattie,* Justice Opala, in his concurring opinion, opined that the proper analysis is the application of the property law concept of covenants running with the land. *Beattie,* 41 P.3d at 384 (Opala, J., concurring). Justice Opala noted that an easement is "a nonpossessory right to the use of land in the possession of another for a definite and limited purpose." *Id.* at 385. Easements can be created through express grant or reservation or by prescription, necessity, or implication. "An easement by express grant, in the form of a contract, deed, or other conveyance, may, in addition to creating the easement proper, also contain various covenants relating to the underlying grant." *Id.* at 385–86.

Covenants in deeds or other conveyances are classified as either real or personal. The undersigned finds the covenant at issue to be a real covenant.

A real covenant is one which is *so connected with the underlying realty* that either the right to enforce the covenant's performance (the benefit) or the duty to perform the covenant's obligation (the burden), or both, passes to the heirs or grantees of one or both of the original covenanting parties by operation of law without express assignment or delegation.

*Beattie,* 41 P.3d at 386 (Opala, J., concurring) (emphasis in original). Provided that the covenant meet certain conditions imposed by law, the benefit or burden passes to remote parties merely by virtue of the parties' acquisition of an interest in land carrying with it the benefit or burden. *Id.*

Oklahoma courts generally require three conditions for a real covenant to run with the land. These conditions are: (1) privity of estate between the party claiming the benefit and the party upon whom the burden rests; (2) the burden or benefit must "touch and concern" the land; and (3) the original covenanting parties must have intended for the benefit or burden to pass to successors. A covenant lacking any of these elements is no more than a personal covenant "treated as an ordinary

contractual provision that binds only the original covenanting parties." *Id.* at 387.

█ In applying the requirements for a covenant to run with the land to the easement's arbitration provision in the present case, the undersigned finds that the covenant satisfies each of the requisite elements to run with the land. First, privity of estate existed between the original covenanting parties, the owner (grantor) and Ajax (grantee), in that a property-based relationship was established in the easement granting to Ajax a right-of-way to lay and maintain two pipelines. "Two types of privity of estate are recognized at common law, horizontal and vertical." *Beattie,* 41 P.3d at 387 (Opala, J., concurring) (emphasis omitted). Horizontal privity relates to the relationship between the original covenantor and covenantee. In this case, the owner of the Subject Property was the original covenantor and Ajax was the original covenantee. The covenant was created in connection with a conveyance of an estate from one to the other, *i.e.,* an easement to lay pipelines on the Subject Property.

Vertical privity refers to the relationship between a present owner or occupier of land and one of the original covenanting parties. "It exists 'when the person presently claiming the benefit, or being subjected to the burden, is a successor to the estate of the original person so benefitted or burdened.'" *Id.* at 388. Justice Opala noted:

> While [the Oklahoma Supreme Court] has never expressly dispensed with horizontal privity as a condition for the running of a real covenant, the vertical aspect of privity is generally the only one identified in the few Oklahoma decisions involving the running of real covenants. [The Court has] described the type of privity necessary for a covenant to run in Oklahoma as a "succession of relationship to the same thing, whether created

by deed or other acts or by operation of law."

*Id.* at 388.

The easement and its arbitration provision in the present case evidence, at a minimum, vertical privity between the parties. Conoco, as successor in interest to Ajax, claims the benefit of the use of the easement (and the arbitration provision therein) while Plaintiff Cason, as a successive owner of the Subject Property in fee simple title, bears the burden of the easement granted to Ajax/Conoco. Accordingly, vertical privity of estate is present.

The second requirement for a successor to the covenantee's estate to compel the performance of the covenant is that the covenant's benefit must "touch and concern" the land. *Beattie,* 41 P.3d at 388–89 (Opala, J., concurring). This element is easily dispensed with in this case because the arbitration provision in the easement granting a right-of-way to lay pipelines provides the exclusive procedure for resolving disputes over damage to crops, fences, and timber, which clearly "touch and concern" the real property. *See also Richardson v. Mustang Fuel Corp.,* 772 P.2d 1324, 1327–28 (Okla.1989).

The final factor for determining whether a covenant runs with the land is whether the original covenanting parties intended for the covenant to run. *Beattie,* 41 P.3d at 389 (Opala, J., concurring). "Their intention is to be determined from their entire agreement construed as a whole and not from any single clause or provision." *Id.* at 389. The undersigned finds that this element is readily satisfied upon a review of the language in the easement and the relevant arbitration provision contained therein. For example, in setting forth the procedure for resolving disputes over damage to crops, fences, and timber, the arbitration provision employs the language "undersigned ... heirs or assigns" and "[g]rantee, its successors or assigns" in

discussing the selection of three disinterested arbitrators. [Doc. No. 26, Ex. A, easement]. Additionally, the arbitration provision is contained in the easement, which is a recorded instrument in the chain of title on the Subject Property giving all future owners record and constructive notice of the provision and the parties' intent that the covenant run with the land.

Accordingly, the undersigned finds that not only is the arbitration agreement enforceable against Plaintiff under general contract law and the presumption of assignability of contracts not involving personal services or qualities, but is also enforceable against Plaintiff under the property law concept of real covenants running with the land, which pass by operation of law without express assignment or delegation.

### D. DEFENDANT DID NOT WAIVE ITS RIGHT TO ENFORCE THE ARBITRATION AGREEMENT

Plaintiff asserts that, even if an enforceable agreement to arbitrate exists, Defendant Conoco waived its right to enforce the arbitration agreement either through its affirmative acts or, in the alternative, through its failure to satisfy the condition precedent to enforcing the arbitration agreement. Conoco contends that Plaintiff has failed to satisfy her burden of proof that Conoco has waived its right to enforce arbitration through its affirmative acts, and that Conoco has satisfied the condition precedent to enforce arbitration. The undersigned finds that Conoco has not waived its right to enforce the arbitration agreement.

#### 1. *Six–Factor Test for Determining Whether Defendant's Affirmative Acts Constituted a Waiver of its Right to Enforce the Arbitration Agreement*

At the outset, the undersigned reiterates the strong state and federal policy favoring arbitration for the resolution of disputes. "When a contract mandates arbitration, courts generally will enforce the arbitration clause absent a waiver." *See Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 465–66 (10th Cir.1988). *See also* 9 U.S.C. § 3 (Court will stay the trial of an action on an issue referable to arbitration "providing the applicant for the stay is not in default in proceeding with such arbitration."). The burden of proof for asserting a waiver of arbitration rests with Plaintiff and has been described by the Tenth Circuit as a "heavy burden of proof." *Peterson*, 849 F.2d at 466.

Oklahoma courts apply a six-factor test for determining whether a defendant's affirmative actions constitute a waiver of its right to enforce arbitration. *See Booker v. Sumner*, 19 P.3d 904 (2001). The relevant factors for determining waiver include:

(1) Whether the party has taken actions inconsistent with a right to arbitrate;

(2) Whether the issue of arbitration was raised only after there had been significant preparation for litigation;

(3) Whether the trial date is near or there has been long delay in raising the issue of contractual arbitration rights;

(4) Whether the party invoking the arbitration right has filed pleadings in the litigation without seeking a stay of proceedings;

(5) Whether the party seeking arbitration has engaged in discovery proceedings that are not available in arbitration or participated in other important intervening steps; and

(6) Whether the opposing party has been prejudiced by the delay in asserting the right to arbitrate.

*Id.* at 906–07 (citing *Northland Ins. Co. v. Kellogg*, 897 P.2d 1161 (1995)). *See also Peterson*, 849 F.2d at 467–68. In general, a court must examine "whether the 'litiga-

tion machinery has been substantially invoked'...." *See Towe, Hester & Erwin Inc. v. Kansas City Fire & Marine Ins. Co.,* 947 P.2d 594, 599 (Okla.Civ.App.Div. 1997).

### (A) Whether Conoco's Actions were Inconsistent with the Right to Arbitrate

■ Plaintiff filed the present action against Conoco on October 11, 2002, in Craig County District Court. [Doc. No. 1]. Plaintiff argues that Conoco's removal of the present action from state court to the Northern District of Oklahoma prior to filing a motion to stay the proceedings and for an order compelling arbitration on April 3, 2003 evidences actions inconsistent with its right to arbitrate. Defendant counters that removal of the case to federal court is insufficient to support a finding of waiver. *See Goff Group, Inc. v. Greenwich Ins. Co.,* 231 F.Supp.2d 1147, 1155 (M.D.Ala.2002). Additionally, Conoco notes that it raised as an affirmative defense a bar of Plaintiff's claims pursuant to the terms of the easement in its Answer and Answer to Plaintiff's First Amended Complaint. [Doc. No. 4, dated November 8, 2002; Doc. No. 16, dated February 13, 2003]. Conoco expressly referred to the arbitration provision in the easement as an affirmative defense in its Answer to Plaintiff's Second Amended Complaint filed one day after Conoco's motion to stay the proceedings and to compel arbitration on April 3, 2003. [Doc. No. 27, dated April 4, 2003; Doc. No. 26]. Therefore, Conoco maintains that it did not "substantially invoke the litigation machinery" before notifying Plaintiff of its intent to assert its arbitration rights.

### (B) Whether Arbitration was Raised Only After Significant Preparation for Litigation

Plaintiff cites Conoco's preparation of answers to Plaintiff's Petition filed in state court and First Amended Complaint in federal court without asserting its right to arbitrate as evidence of Conoco's waiver by affirmative acts. Again, Defendant points to the affirmative defenses asserted in its Answer and Answer to Plaintiff's First Amended Complaint, which stated that Plaintiff's claims were barred pursuant to the terms of the easement. [Doc. No. 4, dated November 8, 2002; Doc. No. 16, dated February 13, 2003]. Conoco expressly referred to the easement's arbitration provision as an affirmative defense in its Answer to Plaintiff's Second Amended Complaint filed one day after submitting its motion to stay the proceedings and to compel arbitration on April 3, 2003. [Doc. No. 27, dated April 4, 2003; Doc. No. 26].

Plaintiff also highlights Conoco's participation in, and preparation of, a Joint Status Report, and the fact that Conoco implicated other potentially liable parties (the Vaughts) in its Answer to Plaintiff's First Amended Complaint. The undersigned notes that the Joint Status Report was entered on December 13, 2002, after Conoco had asserted a bar of Plaintiff's claims based on the terms of the easement in its Answer. Defendant cites *Shanan v. Staley,* 188 Ariz. 74, 932 P.2d 1345, 1349 (1997), for its proposition that preparation and approval of a Joint Status Report does not give rise to an inference of intentional relinquishment of Conoco's right to arbitrate. Compliance with court-imposed deadlines does not support a waiver of arbitration rights. *See Maxum Foundations, Inc. v. Salus Corp.,* 779 F.2d 974, 982–83 (4th Cir.1985). *See also Shahan,* 932 P.2d at 1349.

Conoco's implication of other parties potentially liable to Plaintiff was raised in the same Answer to Plaintiff's First Amended Complaint that contained a reference to the terms of the easement as a bar to Plaintiff's claims. Moreover, asserting

claims against third parties or the presence of other defendants does not, in itself, support a waiver of the right to arbitrate. This is bolstered by the fact that, under the FAA and the OUAA, a court is obligated to enforce an arbitration agreement, even when it results in bifurcated proceedings or the severance of claims. *See Moses H. Cone Memorial Hosp.,* 460 U.S. at 20, 103 S.Ct. 927. The undersigned finds that Conoco's actions do not evidence a substantial invocation of the litigation machinery such that Conoco waived its right to arbitrate.

### (C) Whether the Trial Date is Near or Conoco has Delayed Raising the Issue of Arbitration

In addition to asserting that Plaintiff's claims were barred by the terms of the easement in its answers, Conoco filed a motion to stay the proceedings and for an order compelling arbitration on April 3, 2003. [Doc. No. 26]. The initial scheduling order set the matter for jury trial on September 15, 2003. [Doc. No. 10]. However, the trial has since been reset for December 8, 2003. [Doc. No. 49]. Accordingly, Conoco delayed raising the issue of arbitration, at least in the formal sense of filing a motion to stay, by approximately six months from the date Plaintiff filed suit. However, as previously stated, Conoco did assert as an affirmative defense that the terms of the easement barred Plaintiff's claims as early November 2002 in its Answer. The trial is not scheduled until December 8, 2003, and Defendant opines that the parties could have the matter resolved in arbitration and have obtained an award before that date.

"The mere passage of time cannot be relied upon as a waiver of the right to arbitrate." *See Danny's Const. Co., Inc. v. Birdair, Inc.,* 136 F.Supp.2d 134, 144 (W.D.N.Y.2000). In fact, courts have found no waiver occurred in cases with periods of delay similar to, or even longer than, Conoco's delay in seeking arbitration in this case. *See, e.g., Tenneco Resins, Inc.,* 770 F.2d at 420–21 (eight month delay); *Blumenthal–Kahn Elec. Ltd. v. American Home Assurance Co.,* 236 F.Supp.2d 575, 585 (E.D.Va.2002) (five to six months); *Green v. W.R.M. & Assoc., Ltd.,* 174 F.Supp.2d 459, 463–64 (N.D.Miss. 2001) (nine months after answer filed); and *Envirex, Inc. v. K.H. Schussler,* 832 F.Supp. 1293, 1295–96 (E.D.Wis.1993) (two years). The undersigned finds that Conoco has not significantly delayed raising its intent to arbitrate, and the trial date is not close enough to support a finding of waiver.

### (D) Whether Conoco has Filed Pleadings in the Litigation Without Seeking a Stay of Proceedings

Defendant contends that its participation in preliminary discovery and compliance with court-imposed deadlines does not constitute a waiver of its right to enforce arbitration. In support of its argument, Conoco cites several cases in which courts have held that participation in preliminary discovery, including the taking of depositions and the exchange of interrogatories and requests for production of documents, did not support a finding of waiver. *See, e.g., Tenneco Resins, Inc.,* 770 F.2d at 421 (issuance of and answers to interrogatories and requests for production of documents); *Blumenthal–Kahn Elec. Ltd.,* 236 F.Supp.2d at 586 (discovery via depositions and the exchange of interrogatories and requests for production); *Danny's Const. Co., Inc.,* 136 F.Supp.2d at 144 (discovery analogous to a set of interrogatories); *Nissan Motor Corp.,* 703 So.2d at 326 n. 4 (discovery participation is not substantial invocation of the litigation process); *Shahan,* 932 P.2d at 1349 (disclosure statement and depositions); and *In re Nasr,* 50 S.W.3d 23, 27–28 (Tex.Ct.App.2001) (depositions of parties, responses to interrogato-

ries, requests for admissions, and requests for production not a substantial invocation of litigation machinery).

Additionally, Conoco acknowledges that it has deposed the Plaintiff in this action, but that the deposition occurred around the end of April 2003, after Conoco had filed its motion to stay the proceedings and compel arbitration. Thus, Plaintiff was on notice of Defendant's intent to arbitrate at the time of her deposition. The undersigned finds that the discovery conducted in this case prior to Conoco's filing a motion to stay and to compel arbitration does not, in itself, warrant an inference of waiver by Conoco of its right to enforce arbitration.

**(E) Whether Conoco has Engaged in Discovery Proceedings Unavailable in Arbitration or Participated in Other Important Intervening Steps**

Conoco has clearly availed itself of certain discovery proceedings not available in arbitration. However, the undersigned finds that the limited amount of discovery conducted does not support a finding of waiver in this case without some showing of actual prejudice to Plaintiff, which will be analyzed in more detail below. In fact, some of the discovery conducted may even prove helpful to both parties in the arbitration. *See Tenneco Resins, Inc.,* 770 F.2d at 421 ("[W]hen only a minimal amount of discovery has been conducted, which may be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon the prejudice to the party opposing the motion to stay litigation."). Defendant notes that the deposition of Plaintiff was conducted in an effort to comply with the discovery cut-off deadline and occurred after Defendant had filed its motion to stay and compel arbitration. Limited interrogatories and requests for production have been exchanged. The undersigned declines to in-

fer a waiver of the right to arbitrate based upon the occurrence of limited discovery in this case otherwise unavailable in arbitration absent a showing of actual prejudice to Plaintiff. *See Shanan,* 932 P.2d at 1349 ("[L]imited discovery, even though generally unavailable in arbitration, fails to show sufficient prejudice to warrant finding waiver.").

**(F) Whether Plaintiff has been Prejudiced by Conoco's Delay in Asserting a Right to Arbitrate**

The final, and perhaps most important, factor for determining whether Conoco waived its right to enforce arbitration by its affirmative acts is whether Plaintiff has suffered actual prejudice by Conoco's delay in asserting a right to arbitrate. Courts overwhelmingly examine the actual prejudice to a plaintiff as a result of a defendant's delay in asserting the right to arbitrate. *See, e.g., Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.,* 239 F.Supp.2d 332, 339–40 (S.D.N.Y.2002); *Blumenthal–Kahn Elec. Ltd.,* 236 F.Supp.2d at 584 (citing *Maxum Foundations, Inc.,* 779 F.2d at 981); *Green,* 174 F.Supp.2d at 463; *Danny's,* 136 F.Supp.2d at 143; and *In re Nasr,* 50 S.W.3d at 27. Defendant argues that Plaintiff's claim of actual prejudice from Conoco's delay in asserting arbitration is substantially diminished by Plaintiff's failure to join all parties, *i.e.,* co-defendants Gale and Randy Vaught, until as late as March and June of 2003. At the hearing, Plaintiff's counsel argued that Plaintiff had been prejudiced in terms of expense, the preparation of preliminary expert witness reports, and time. However, Plaintiff's counsel was unable to specifically articulate any substantial prejudice incurred by Plaintiff that would not be of benefit in arbitration. The undersigned finds that Plaintiff has failed to demonstrate any actual prejudice suffered by Conoco's delay in asserting arbi-

tration rights or from the limited discovery that has occurred in the case.

Accordingly, the undersigned finds that Plaintiff has failed to satisfy her "heavy burden of proof" that Conoco, by its affirmative acts, waived its right to enforce the arbitration clause contained in the easement. Plaintiff has shown no actual prejudice incurred as a result of the delay or from the limited discovery conducted. Moreover, the cases cited by Plaintiff in support of an inference of waiver are distinguishable from the facts and circumstances of this case. Most notably, *Booker v. Sumner*, 19 P.3d 904 (Okla.Civ.App. 2001) and *Northland Ins. Co. v. Kellogg*, 897 P.2d 1161 (Okla.App.1995), involved the filing of motions for summary judgment prior to filing a motion to compel arbitration. In the present case, Conoco did not seek ultimate resolution of the case on the merits prior to asserting its right to arbitrate.

### 2. *Conoco did not Fail to Satisfy the Condition Precedent to Enforce the Arbitration Agreement*

Plaintiff alternatively asserts that Conoco has waived its right to enforce the arbitration agreement through its failure to satisfy the condition precedent to arbitration, *i.e.*, in failing to follow the stated procedure in the arbitration provision. In outlining the procedure for resolving a dispute over damage to crops, fences, and timber, the arbitration clause states that the damage "if not mutually agreed upon," will be determined by three disinterested persons. [Doc. No. 26, Ex. A, easement]. Plaintiff argues that Conoco has waived its right to enforce the arbitration agreement based on its failure to negotiate with Plaintiff regarding the damage prior to the filing of the lawsuit. Plaintiff additionally cites the OUAA, which provides that a motion to stay will be entered where the movant establishes: (1) the existence of a written agreement to arbitrate, and (2)

"the opposing party's refusal to arbitrate...." *See* 15 Okla. Stat. § 803.

Conoco contends it did not waive its right to enforce arbitration by failing to negotiate with Plaintiff. First, Conoco notes that Plaintiff filed suit almost immediately after the alleged damage to the Subject Property occurred. Plaintiff alleged in her state court Petition that the damages occurred "on or about the 2nd or 3rd day of October, 2002." Plaintiff subsequently filed suit against Conoco on October 11, 2002. [Doc. No. 1]. Second, Conoco maintains it is "beyond doubt that the parties could not reach an agreement" regarding the damage prior to the filing of this action, which, Conoco insists, is sufficient to satisfy the condition precedent in the arbitration provision that such damage is "not mutually agreed upon." Defendant points to Plaintiff's responses to interrogatories identifying conversations between Plaintiff, Conoco, and Conoco's contractor about the easement clearing to demonstrate the improbability of reaching an agreement before the suit was filed. [Doc. No. 36, Ex. C, Plaintiff's Responses to Discovery Requests at 5–6]. Conoco additionally asserts that Plaintiff never made a demand to Conoco for the alleged damage before initiating this action. Finally, Conoco highlights Plaintiff's footnote number 5 in her response brief to illustrate Plaintiff's general unwillingness to submit to arbitration. [Doc. No. 32 at 7 n. 5, "Here, although Plaintiff is not now agreeable to arbitration of the dispute, for the reasons set forth herein...."].

The undersigned finds that Conoco did not waive its right to enforce the arbitration agreement in the easement due to a failure to satisfy the condition precedent, which requires arbitration by a panel of three disinterested persons "if [the damage is] not mutually agreed upon." In light of the strong policy favoring arbitra-

tion of issues properly referable to arbitration and the strong presumption against a waiver of the right to arbitrate, the undersigned finds sufficient evidence that Conoco has satisfied the condition precedent to arbitration in demonstrating that the damages were not mutually agreed upon, and that Plaintiff was unwilling to arbitrate the matter prior to filing this action.

E. MOTION TO STAY SHOULD NOT BE DENIED ON THE GROUNDS IT WOULD RESULT IN "PIECEMEAL" LITIGATION OF CLAIMS AGAINST DEFENDANTS GALE AND RANDY VAUGHT

■ Plaintiff asserts that the motion to stay proceedings and for an order compelling arbitration should be denied because the arbitration provision will not govern or resolve Plaintiff's claims in this lawsuit against Defendants Gale and Randy Vaught, d/b/a Vaught Tree Service. Plaintiff notes that Conoco implicated the Vaughts as potentially liable parties in its Answer. Vaught Tree Service was the contractor hired by Conoco to perform the easement clearing activities on the Subject Property. Plaintiff has amended her complaint to include the Vaughts as defendants in this action. The Vaughts were not parties to the 1930 easement containing the disputed arbitration provision, nor are they successors in interest to the agreement. Accordingly, an order staying the proceedings and compelling Conoco and Plaintiff to arbitration will not resolve Plaintiff's claims against the Vaughts. Defendant Conoco argues that the arbitration agreement must be enforced despite the presence of other parties to the underlying dispute who were not parties to the arbitration agreement. The undersigned finds that case law supports Conoco's contention that the presence of other defendants in the action who are not subject to the arbitration agreement does not preclude arbitration of Plaintiff's claims against Conoco.

Although an often touted benefit of arbitration is the expeditious resolution of disputes, such speedy resolution is not always the case. The United States Supreme Court has recognized the need to compel arbitration of claims, even where ordering arbitration may have the unfortunate result of litigating claims in a "piecemeal" fashion. To this end, the Supreme Court has stated:

> The Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even when the result would be the possibly inefficient maintenance of separate proceedings in different forums. . . .
>
> . . . .
>
> By its terms, the Act leaves no room for the exercise of discretion by a district court, but instead mandates that a district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. The Act's legislative purpose was to ensure judicial enforcement of privately made arbitration agreements, and not to promote the expeditious resolution of claims.

*See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218–19, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). *See also* 9 U.S.C. §§ 2–4.

The Supreme Court has noted that the unfortunate result of bifurcated proceedings "occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Id.* at 221, 105 S.Ct. 1238 (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Accordingly, based on the mandatory nature of the FAA, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the

underlying dispute but not to the arbitration agreement." *See Tenneco Resins, Inc.*, 770 F.2d at 422 (citing *Moses H. Cone Memorial Hosp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765).

The OUAA also contemplates the necessity of bifurcated proceedings when certain claims are governed by an arbitration agreement. This is evidenced in the Act's language regarding severability of claims in an application to the court for a stay of proceedings and for an order compelling arbitration. Under the OUAA, "[a]ny action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this act or, if the issue is severable, the stay may proceed with respect thereto only." *See* 15 Okla. Stat. § 803(D). Therefore, Oklahoma law is in accord with federal law as to the mandatory result of piecemeal litigation of claims where certain claims are governed by an arbitration agreement.

In light of the mandatory effect of the FAA and the OUAA, and relevant case law discussing the propriety of compelling arbitration of claims even where the result may be piecemeal litigation of claims against other parties not subject to the arbitration provision, the undersigned United States Magistrate Judge finds that the fact that Plaintiff's claims against Gale and Randy Vaught, d/b/a Vaught Tree Service, will not be resolved by arbitration does not, in itself, preclude enforcement of the arbitration provision between Plaintiff and Defendant Conoco.

### F. WHETHER THE ARBITRATION AGREEMENT GOVERNS ALL OF PLAINTIFF'S CLAIMS

#### 1. *Whether "Easement Clearing" is Covered by the Arbitration Provision*

■ Plaintiff argues that Defendant's clearing of the easement does not fall within the purview of the arbitration clause. The arbitration clause governs disputes over "damage to crops, fences and timber, which may arise from laying, maintaining, operating or removing such pipe lines." [Doc. No. 26, Ex. A, easement]. Plaintiff contends that Defendant's conduct in clearing the easement did not equate to "laying, maintaining, operating, or removing" the pipelines. Defendant counters that the cutting of Plaintiff's trees, causing the damage to the timber, arose in the course of clearing the easement for purposes of maintaining and operating the pipelines.

The undersigned finds that Plaintiff's interpretation of the language in the arbitration provision to preclude the applicability of the arbitration clause is a strained reading of the language and runs contrary to the intent of the easement and arbitration provision. *See P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) ("In keeping with this liberal [federal] policy toward arbitration, courts are instructed to resolve 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration.'"). Plaintiff's attempt to restrict the scope of the arbitration provision by arguing that *easement* clearing does not constitute maintenance of the pipelines is unpersuasive. Logic dictates that clearing the easement to enable fly-over inspections and other methods for maintaining and operating the pipelines equates to "maintaining" the pipelines. The arbitration provision does not require that Defendant physically touch the pipelines in maintaining or operating them. Thus, the damage to the timber arose from Defendant's maintenance and operation of the pipelines through Defendant's clearing of the easement within which the pipelines are located. The undersigned finds that Defendant's activities of "clearing the subject easement" fall within the purview of

the arbitration provision in the recorded easement on the Subject Property.

### 2. Narrow Versus Broad Arbitration Provision: Geographic Boundary and Type of Damages Issues

■ Plaintiff asserts that the arbitration clause is narrow in scope and does not cover the claims arising from damage outside the geographic boundaries of the easement. Plaintiff argues that the easement is thirty feet in width. Defendant Conoco, through Vaught Tree Service, cleared trees and vegetation up to fifty feet centered over the pipelines. Plaintiff insists that Defendant's "routine maintenance" of the right-of-way has always been within the thirty-foot width for the past 72 years and has never covered the fifty-foot width. Plaintiff argues that the arbitration clause can only apply to damages within the thirty-foot easement and cannot apply to claims for damage outside the thirty-foot easement.

Conoco maintains that Plaintiff's argument is contrary to the language of the easement. Conoco notes that the description of the easement covers the entire Subject Property.[3] No language exists in the arbitration provision limiting its effect to damage occurring within a geographic boundary. Conoco asserts that the easement contemplates actions of the easement holder on the entire property based upon language discussing "ingress and egress to and from" the pipelines. [Doc. No. 26, Ex. A, easement; Doc. No. 36]. The easement specifically states that "all *pipe lines* constructed under this grant shall be confined to a strip of ground not exceeding thirty feet in width." [Doc. No. 26, Ex. A, ease-ment] (emphasis added). Conoco contends that the thirty-foot restriction covers only the *placement* of the pipelines and does not limit maintenance, operation; or repair of the pipelines to an area of only thirty feet in width.

The undersigned finds the arbitration provision in the present case is a narrow arbitration provision to determine "damage to crops, fences and timber, which may arise from laying, maintaining, operating or removing such pipe lines." [Doc. No. 26, Ex. A, easement]. Whether the easement is limited to thirty feet or may be extended to fifty feet is a dispute of contractual interpretation, which the original parties never intended to submit to arbitration. There is nothing in the language of the easement that suggests the original parties intended a dispute over the width of the easement should be referred to arbitration. *See Hassler v. Columbia Gas Transmission Corp.*, 318 Pa.Super. 302, 464 A.2d 1354, 1357 (1983) ("[A]rbitration agreements are to be strictly construed and ... such agreements should not be extended by implication.").

The parties have submitted case authority supporting their respective positions that the easement has a thirty-foot, fifty-foot, or indeterminable width. *See Plantation Pipe Line Co. v. Locke*, 290 F.Supp. 752, 753–55 (N.D.Ala.1968). *See also Beers v. Williams Pipe Line Co.*, 1994 WL 590902 (D.Kan.1994). Plaintiff contends that Defendant's course of conduct over the last 72 years in confining its activities to the thirty-foot strip of land defined the scope of the easement. Defendant's motion to stay the proceedings and compel

---

**3.** The legal description for "the right-of-way to lay, construct, maintain, operate, alter, re-pair, remove, change the size of, and replace two lines of pipe" provides as follows:

Lots Three (3) and Four (4), or West Half (W1/2) of South West Quarter (SW1/4) Section Thirty (30) Township Twenty-four (24) North, Range Twenty-one (21) East, being the same land acquired and more fully described as per deed recorded in Record Conveyance Book 135, at page 32, of the records of Craig County, Oklahoma. [Doc. No. 26, Ex. A, easement].

arbitration does not require the undersigned to resolve that dispute at this time. It requires that the Court decide which part of the dispute will be referred to arbitration.

Upon application by one of the parties, a court will stay litigation proceedings and refer an issue to arbitration where a written agreement to arbitrate exists and upon the court's satisfaction that the issue is referable to arbitration. *See* 9 U.S.C. § 3. In determining whether arbitration should be compelled, "[t]he key inquiry is whether a given dispute falls within the scope of the agreement to arbitrate because the existence of such an agreement is a prerequisite to arbitration." *Pierman v. Green Tree Fin. Servicing Corp.*, 933 P.2d 955, 956–57 (Okla.Civ.App.1997). Accordingly, having concluded that a written agreement to arbitrate exists in the present case, the undersigned must determine which part of Plaintiff's claims are properly referable to arbitration.

Plaintiff asserts that the disputed arbitration clause does not apply to the *type* of damages claimed. Plaintiff has sued Defendant Conoco for wrongful removal of trees, trespass, and inverse condemnation resulting from Conoco's actions in clearing trees and vegetation on the Subject Property for purposes of maintaining its easement. Conoco contends that, regardless of the labels Plaintiff attempts to attach to her claims, Plaintiff's claims center on damage to timber arising from Conoco's maintenance and operation of the pipelines, thus bringing the claims within the purview of the arbitration agreement. Additionally, Conoco argues that the *measure of damages* for the alleged trespass and inverse condemnation resulting from Defendant's tree-clearing activities fall within the scope of the arbitration clause and should be compelled to arbitration.

In *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861 (10th Cir.1999), the Tenth Circuit found that certain tort-based claims were within the scope of an applicable arbitration agreement. In so doing, the Court noted:

[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims "touch matters" covered by the parties' [contract], then those claims must be arbitrated, whatever the legal labels attached to them.

*Id.* at 871 (quotations omitted). The Tenth Circuit noted the Seventh Circuit's rationale that "a party may not avoid a contractual arbitration clause merely by casting its complaint in tort." *Id.* at 871 (quotations omitted).

**(A) Trespass Claim**

Plaintiff brings a cause of action for trespass against Conoco, arguing that Conoco's conduct in clearing trees outside the bounds of the thirty-foot strip of land under which the pipelines are located constituted a trespass "upon a portion of [Plaintiff's] property located adjacent to and outside the right-of-way." [Doc. No. 23, Second Amended Complaint at ¶ 6]. At the hearing, Plaintiff argued that, as a result of Conoco's trespass, she has sustained damages in the form of damaged trees, high tree stumps left on the Subject Property, a "mess" outside the right-of-way, diminished aesthetic value, difficulty in mowing the area due to unearthed rocks, and Conoco's actions rendering the Subject Property as virtually impassable. Plaintiff further contends she is entitled to damages "in an amount not less than three (3) times nor more than ten (10) times the actual detriment caused by the trespass and wrongful removal of timber" pursuant to 23 Okla. Stat. § 72, which provides for the measure of damages for wrongful re-

moval of timber. [Doc. No. 1, state court Petition at ¶ 8]. Conoco argues that the easement clearing activities were both reasonable and necessary for the operation and maintenance of the pipelines, even if they exceeded a width of thirty feet.

### (B) Inverse Condemnation Claim

Plaintiff has additionally asserted a cause of action against Defendant Conoco for inverse condemnation, alleging a substantial interference with Plaintiff's use and enjoyment of the Subject Property amounting to an improper taking without just compensation under 66 Okla. Stat. § 57. Plaintiff argues that Defendant exceeded the scope of its easement by clearing trees up to fifty feet over the center of the pipelines and, as such, improperly "took" the extra twenty feet of Plaintiff's land without compensating her. Specifically, Plaintiff's state court Petition alleged that Conoco, without initiating eminent domain proceedings, "confiscate[d] and appropriate[d] a portion of the [Subject Property] by clearing all trees and vegetation in an area located outside the confines of their right-of-way easement." [Doc. No. 1, state court Petition at ¶ 10].

Defendant Conoco contends that Plaintiff is asserting claims for damages covered by the arbitration provision in that the damages arose from maintaining and operating the pipelines through tree-clearing activities, thus invoking the "damage to . . . timber" language in the arbitration clause. Conoco argues that the arbitration provision applies regardless of the fact that Plaintiff has couched her claim as one for inverse condemnation.

Plaintiff cites *Beers v. Williams Pipe Line Co.*, 1994 WL 590902 (D.Kan.1994), for her proposition that the trespass and inverse condemnation claims are not subject to the arbitration provision. In *Beers,* the Court denied the defendant's motion to compel arbitration upon finding that the arbitration clause in the right-of-way agreement, which governed disputes over damage to "fences, crops or buildings, drain tile and other improvements and timber," did not extend to the plaintiff's claims for response and cleanup costs under CERCLA and for damages to water sources and land related to the plaintiff's negligence, nuisance, and breach of contract claims. *Id.* at *2. The *Beers* Court held that the arbitration clause was narrow in scope, and that "[n]arrow arbitration clauses are to be so enforced." *Id.* at *2.

Defendant distinguishes Plaintiff's reliance on *Beers.* Conoco contends that the type of damages were not covered by the arbitration clause because the plaintiff was suing to recover pollution cleanup costs under CERCLA and for land and water damage. Conversely, Conoco asserts that Plaintiff Cason is suing for damages resulting from the removal of timber from her land, which is governed by the arbitration provision.

In *Hassler v. Columbia Gas Transmission Corp.*, 318 Pa.Super. 302, 464 A.2d 1354 (1983), the Court held that damage sustained from loss of a cow could "by no stretch of language" be construed as a loss to either a crop or a fence in order to subject it to the arbitration clause at issue. *Id.* at 1357. However, to the extent that damage occurred in the form of lost trees, the Court construed "crops" to include trees and found arbitration proper for that claim. Additionally, the *Hassler* Court noted that the term "arising" can be "fairly construed as providing for the recovery of consequential damages. . . ." *Id.* at 1357. *See also Lone Star Gas Co. v. Baccus,* 11 S.W.2d 355, 356–57 (Tex.Civ.App.1928) (holding that damage to land did not equate to damage arising to "crops or fences" and was not referable to arbitration).

## IV. RECOMMENDATION

The undersigned United States Magistrate Judge finds there is there nothing in the easement or the arbitration clause to suggest that the original parties to the document intended to arbitrate a dispute over the width of the easement or whether the Defendant had a right to remove trees outside the width of that easement. It shall be the Court's province to determine the width of the easement, whether Defendant had a right to remove trees outside the width of that easement, and the success or failure of Plaintiff's claims for trespass and inverse condemnation.

The undersigned recommends that if the Court determines that the easement covers the fifty-foot width or that Defendant had a right to clear the trees outside the confines of the easement, then the amount of the damages suffered by Plaintiff shall be submitted to arbitration. If the Court determines that the easement covers only thirty feet and that Defendant had no right to clear trees outside the confines of that thirty feet, the Court shall determine the damages suffered by Plaintiff from the wrongful clearing beyond the thirty-foot width and shall determine the success or failure of Plaintiff's claims of trespass and inverse condemnation. Damage to timber occurring within the thirty-foot easement must still be referred to arbitration pursuant to the arbitration clause. Once the Court determines that an issue is referable to arbitration, the Court is *required* to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." *See* 9 U.S.C. § 3. The undersigned is reminded that the FAA requires district courts to compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). As previously discussed, the inefficiency of piecemeal or bifurcated litigation is not grounds for denying or granting a request to compel arbitration. *See supra,* at 1325–1326. All claims against the Vaughts must proceed outside the purview of arbitration.

For the foregoing reasons, the United States Magistrate Judge recommends that the District Court **GRANT IN PART AND DENY IN PART** Defendant Conoco Pipeline Company's Motion for Stay of Proceedings and for Order Compelling Arbitration. [Doc. No. 26–1, 26–2].

## V. OBJECTIONS

The District Judge assigned to this case will conduct a *de novo* review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States,* 950 F.2d 656 (10th Cir.1991); *Talley v. Hesse,* 91 F.3d 1411, 1412–13 (10th Cir.1996).

July 3, 2003.