JOHN DUNN, APPELLANT, VS. BARTON AND HAZELTON, AP-
PELLEES.

It is the duty of an under-lessee to inform himself of the covenants contained in the original lease, for, if he enter and take possession, he will be bound by these covenants. Where the restriction upon the manner of using the premises is a covenant running with the land, it is binding upon the estate in the hands of a sub-tenant. He takes the title of the lessee with like limitations and restrictions.

Appeal from the Circuit Court for Escambia county.

The facts are stated in the opinion of the court.

*C. C. Yonge* for Appellant.

Mr. Justice Westcott delivered the opinion of the court.

This bill is brought by the appellant, John Dunn, against the respondents, Barton and Hazelton.

The plaintiff alleges that Mary C. Barton leased the premises, which are mentioned in the bill and in reference to which this action arose, to Charles Evans for the term of five years from May 1, 1874; that Evans assigned the lease to W. M. Abbott, who assigned it to plaintiff Dunn on the 24th of November, 1874, in consideration of five hundred and twenty dollars; that on the 27th day of January, 1875, the said Mary Barton, in consideration of being permitted to occupy the premises until the end of the term without additional rent, over and above what he was to pay, (the sum of forty dollars per month,) agreed that during the period of the lease she would not authorize or permit the premises to be used in any way, or for any purpose that would conflict or come in competition with the business of the said John Dunn, as then carried on in the adjacent building, which was that of a public bar-room, where liquors and wines were retailed and where refreshments were furnished, and that she shall occupy the premises until the end of the lease.

As an exhibit to the bill there is filed an agreement, executed by Mary C. Barton and John Dunn, under seal, attested by two witnesses, authorizing her to use and occupy the premises for the time named and upon the conditions stated. Upon this agreement there is no evidence of its having been recorded, nor is there in the bill any allegation to that effect.

The plaintiff then alleges that Mary C. Barton is now permitting the premises to be used for carrying on the same

business that he is engaged in, and prays an injunction restraining her from the use of the premises in the manner mentioned, and from sub-letting the same to be used for any purpose not authorized by the agreement between the parties.

The plaintiff, as against Annie Hazelton, alleges that defendant, Mary C. Barton, after having occupied the house for about one year, has "undertaken to sub-let the said premises to Annie Hazelton, who has entered upon and is now occupying said tenement without plaintiff's permission and against his objections, in the business of a public bar-room, where liquors and wines are retailed, and refreshments are furnished."

The plaintiff then alleges that defendants have. no property, over legal exemptions, within reach of any judgment or execution, sufficient to cover the damages he is about to sustain and is sustaining daily.

He alleges further, that he made a lease to one William Blumer, covenanting that he (Blumer) should enjoy the same protection from competition in business as he had secured to himself in his contract with Mary C. Barton. He prays for an injunction restraining the defendants from the use of the said premises in the manner indicated; that Mary C. Barton be enjoined from sub-letting the said tenement to Annie Hazelton, or to any other person, to be used in the manner set forth, or for any other purpose conflicting with the interest of his business, or of that of his lessee, William Blumer; that said Annie Hazelton be restrained from occupying or using the said premises, in the manner and for the purposes above set forth, or without the consent of your orator, or in any manner dispossessing him of the exclusive control of the same, as provided in his said contract of January 27, 1875.

Mary C. Barton, in her answer, denies that she executed the contract of 27th January, 1875, with a knowledge of its contents; that she never read it, or had it read to her; that she was unaccustomed to business and was imposed upon

by plaintiff, and that his act was a fraud; admitting, however, that she had previously agreed to sign an agreement not to use the "tenement," nor permit it to be used, for retailing liquors by the glass in competition with his business. She denies any agreement to give him exclusive control of the premises, and affirms that there was no consideration for the contract. She admits the lease to Annie Hazelton, but denies that she authorized any conflict with plaintiff's business. She affirms that the adjoining house occupied by plaintiff's lessee, Blumer, has become a nuisance to her, by reason of the nightly noisy dancing and frequent drunken orgies of male visitors and women lodgers, and claims that, by reason of plaintiff's permitting such use of his house, he is estopped from complaining of her in a court of equity.

Defendant, Annie Hazelton, answers that while it may be true that plaintiff contracted with Mary C. Barton as alleged in his bill, for anything to the contrary she knows, yet that she is an utter stranger to all and every such matters, and cannot form any belief concerning the same; that she rented the Barton House on the 1st of February, 1876, from Mary C. Barton, at the monthly rent of $100, payable in advance, for two months of which she has paid, and that she is now engaged in keeping a restaurant and refreshment saloon upon the premises, and denies that this business is injurious or detrimental to the business of the plaintiff. To these answers there was a general replication. After these replications follow affidavits on one side affirming that Wm. Blumer kept a house of improper character, and some alleging that Annie Hazelton kept a house of the same kind.

No allusion has been made to their particular contents in argument, and we see no necessity in the disposition of this case to recite them here.

On the 22d February, 1876, after argument, a temporary injunction was granted restraining Mary C. Barton from permitting or authorizing the use of the premises for the pur-

pose of retailing wines and liquors and furnishing refreshments, or otherwise depriving plaintiff of the exclusive control of the premises, and enjoining Annie Hazelton from using the premises for such purpose.

A few days after granting this injunction, Annie Hazelton moved to amend her answer upon an affidavit to the effect that since the filing of her answer it had come to her knowledge that the lease to Dunn·from Abbott of the premises known as the Barton House, whereon John Dunn founded his claim to the injunction herein issued, was not recorded in accordance with the requirements of the laws of Florida, as against third purchasers, without notice, at the time she rented the premises from Mary C. Barton; that before renting said premises from said Mary C. Barton she caused the records in the clerk's office to be examined, and thereby ascertained that the ownership of said property was in the said Mary C. Barton, and that she never had any notice, actual or constructive, that said John Dunn had leased the said premises from any one, or had any right or title to the possession of the same, until after the institution of these proceedings. Upon the affidavit she was permitted to amend her answer accordingly, to which answer replication was filed.

The plaintiff. then moved to amend the prayer of his bill, asking for a receiver of the rents during the existence of the lease by Mary C. Barton to Annie Hazelton, in the event the court did not enjoin Annie Hazelton as prayed for, and that Mary C. Barton be enjoined from the collection of said rents, and that the same be paid into the hands of the receiver to abide the formal order of the court, and that Mary C. Barton be enjoined from making any further lease of the premises inconsistent with her contract. This motion, a motion to dissolve the injunction, and a motion for leave to file an affidavit in opposition to the matter set up in the answer, was heard; leave to file the affidavit was granted; the motion to amend the bill was denied, and the injunction was

dissolved as to Annie Hazelton. From these orders the plaintiff appeals. The grounds upon which their reversals are sought are—

1st. That the court erred in permitting Annie Hazelton to amend her answer in the manner stated.

2d. That the court erred in refusing leave to complainant to amend the prayer of his bill in the manner requested.

3d. That the court erred in dissolving the injunction as to Annie Hazelton.

We consider the last ground of appeal first. Mary C. Barton executes a lease for a house, in the city of Pensacola, to Evans, for five years from May 1, 1874; this lease Evans assigned to Abbott, and Abbott, on the 24th of November, 1874, assigned it to plaintiff in consideration of $520. On the 20th of January, 1875, Mary C. Barton, the original lessor, entered into an agreement with plaintiff, by which she was to occupy the premises for the balance of the term, stipulating that she would not permit the premises to be used in any way, or for any purpose, with the business the plaintiff carried on in the adjacent building, which was that of a public bar-room, where liquors and wines were retailed, and where refreshments were furnished. This agreement, executed in the presence of two witnesses, is filed as an exhibit to the bill. It was a transfer of the entire term, the rent reserved being the same as that fixed in the original lease. (30 New York, 456.) Upon it there is no evidence of its being recorded.

The plaintiff then alleges that Mary C. Barton, after having occupied the house for about one year, " has undertaken to sub-let the said premises to Annie Hazelton, who has entered upon and is now occupying the house without plaintiff's permission and against his objections, in the business of a public bar-room, where liquors and wines are retailed, and refreshments are furnished." 

There are other allegations as to the insolvency of the de-

fendants, and as to another lease to William Blumer by plaintiff, which, in the view we take of the case, it is unnecessary to mention.

All the right, title and interest which any of these parties claim in the premises, is derived primarily from Mary C. Barton. The plaintiff himself claims through an assignment of her lease. She was in possession at the time of her lease to Annie Hazelton; as assignee of the term she makes a sub-lease to Annie Hazelton, general in its character, and without reference to any restriction in the agreement between plaintiff and her lessor. The rent she reserves is different in amount from that reserved in the first lease. Do these allegations make a good case against her?

Such a covenant as existed between Mrs. Barton and Dunn would run with the land, affecting, as it does, the mode of enjoyment of the premises. (10 East, 130; 1 Smith's Leading Cases, 122; 17 Wend., 136.) It would not be void as being in restraint of trade. (1 Smith's Leading Cases, 131.) Has Dunn an equity as against Mrs. Hazelton to enforce the covenants between himself and his assignee, Mrs. Barton?

Plaintiff in his bill no where alleges, as against Mrs. Hazelton, that she had notice of the covenant not to use the premises for a public bar-room, or that he recorded his deed; and Mrs. Hazelton in her answer affirms that she is an utter stranger to the covenant set up in the bill as between her lessor and Dunn, her lessee's assignor.

The covenant between Mrs. Barton and Dunn was no part of the lease assigned by Dunn to Mrs. Barton. It was a separate and distinct agreement between them outside of the terms of the lease. Now, as between Mrs. Hazelton, the under lessee, and plaintiff, there is neither privity of estate nor of contract. She has only a partial estate, the reversion being in Mrs. Barton. If Mrs. Hazelton was an assignee of Mrs. Barton, she would be personally liable to plaintiff upon

all covenants which run with the land, but she is simply an under lessee.

In some of the English cases it is held that it is the duty of a party, when contracting for an under-lease, to inform himself of the covenants contained in the original lease, for if he enter and take possession of the property he will be bound by these covenants. 3 M. & K., 283-282.

In Flight vs. Barton, 3 M. & K., 282, the court held that a party who enters into an agreement for an under-lease, without inquiring into the covenants of the original lease, has constructive notice of all usual covenants in the original lease.

In the case of Corser vs. Collingee, the Master of the Rolls says of an under-lessee, who goes into possession under an agreement for an under-lease, " if there were no evidence whatever other than the facts I have now stated, *prima facie*, a man who agrees to take an under-lease must know that he is to be bound by all the covenants contained in the original lease."

In the case of Wheeler and another vs. Earle, 5 Cushing, 35, the Supreme Court of Massachusetts, in speaking of the effect of covenants running with the land in leasehold estate, says : " The restriction upon the manner of using the premises runs with the land and is binding upon the estate in the hands of sub-tenants. They take only the title of the lessee, and with the title, limitations and restrictions."

Applying this principle to this case, Annie Hazelton holds the estate subject to the covenants running with the land in the hands of her lessor. This covenant runs with the land ; it affects the mode of enjoyment of the premises. 10 East, 130 ; 17 Wend., 136 ; 1 Smith's Leading Cases, 122.

Whether a sub-lessee is a purchaser within the meaning of the statutes regulating the recording of conveyances and protecting *bona fide* purchasers for valuable consideration without notice, we think it unnecessary to inquire. The sub-

lessee is in possession of the estate of his lessor, and he is bound by his covenants which relate to the occupation of the premises.

As to the remedy by injunction. Between vendor and purchaser, a court of equity will interfere to enforce a covenant of this character, and the same principle justifies its control of a sub-lessee. The jurisdiction is unquestionable. (4 Sand., 502; 2 Phillips, 775; High on Inj., 727.) With this view the question as to the amendment of the prayer of the bill, as well as the amendment of the answer, becomes immaterial.

The order dissolving the injunction is reversed and set aside, and the case will be remanded, with instructions to re-instate the injunction upon the motion of the plaintiff and upon his giving such bond as the court may, in its discretion, require.