105 So.2d 798 (1958)
MAULE INDUSTRIES, Inc., a Florida corporation, Appellant,
v.
SHEFFIELD STEEL PRODUCTS, Inc., a Florida corporation, Appellee.
No. 58-2.
District Court of Appeal of Florida. Third District.
October 14, 1958.
Rehearing Denied November 5, 1958.
*799 Salley & Roman, Miami, for appellant.
John H. Gunn, Miami, for appellee.
CARROLL, CHAS., Chief Judge.
Appellant, the defendant in the trial court, has appealed from a summary decree which struck certain defenses and which granted specific performance. Reservation of jurisdiction for trial of certain issues relating to damages made the decree interlocutory rather than final.
Seminole Rock & Sand Company, owners of certain lands over which there ran a spur track connected to the Seaboard Air Line Railroad, conveyed to the plaintiff Sheffield Steel Products, Inc., a parcel traversed by the spur line.
The deed, a copy of which was attached to the complaint, contained certain covenants relating to maintenance by the grantor, its successors and assigns, of the railroad facilities for use by the grantee, and its successors and assigns.[1]
*800 From the time of the conveyance in 1952 until April 1956, the plaintiff-grantee used the railroad facilities extending over the other lands owned by its grantor, and during such time these facilities were maintained and kept in good repair by the grantor.
In 1956, there was a foreclosure of a mortgage encumbering lands of the grantor, including those over which ran the spur line connecting with the spur line on grantee's parcel. The defendant Maule Industries, Inc., became the purchaser at the foreclosure sale. After acquiring those lands, Maule continued to allow plaintiff to use the railroad facilities until March 1957, although Maule disputed plaintiff's claim that Maule had maintained its tracks during that period.
In 1957, Maule notified plaintiff of its position that plaintiff had only an easement over Maule's land for railroad purposes, and that Maule was under no obligation to furnish and maintain such railroad facilities. Thereafter, this suit was commenced for specific performance of the covenant, and for damages.
Defendant relied on certain affirmative defenses, set out in the answer.[2] The chancellor sustained a motion of plaintiff to strike those defenses, decreed specific performance of the covenant to furnish the railroad facilities and retained jurisdiction to ascertain the amount of plaintiff's damages.
We deem it necessary to discuss three of the points raised under appellant's sixteen assignments of error: Appellant's contention (1) that the trial court misinterpreted the language of the covenant, (2) that the covenant in the deed was purely a personal obligation of plaintiff's grantor and not a covenant running with the land, and (3) that appellant was a bona fide purchaser without notice, actual or constructive, of the covenant and, therefore, such an obligation could not be imposed upon it.
On the first point, appellant argues that the covenant can not be construed to require or provide for the furnishing and upkeep of the railway facilities across its land. In decreeing that appellant should "restore to an adequate condition for the carriage of railroad freight cars thereon" and to "thereafter maintain such facilities in an adequate condition", the chancellor required no more than was essential to secure to the covenantee the benefit of the covenant calling for the covenantor to "keep open railroad facilities running over other lands of the" appellant, and the covenant that appellant should provide "adequate railroad facilities * * * at all times" to the covenantee. In arguing that the covenant should be interpreted only to mean that the covenantor, its successors and assigns, should allow the covenantee to use the railroad facilities on and across the former's lands but without obligation to maintain such facilities, the appellant urges upon us a construction which is not warranted under the language used and is inconsistent with the clear meaning and intent of the covenant.
*801 We turn now to the question of whether the covenant was a covenant running with the land. A covenant running with the land differs from a merely personal covenant in that the former concerns the property conveyed and the occupation and enjoyment thereof, whereas the latter covenant is collateral or is not immediately concerned with the property granted. If the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner, it is a covenant running with the land. The covenant in question comes within the above stated rules and constitutes a covenant running with the land. See 7 Thompson on Real Property, Perm.Ed., § 3622, p. 111; 3 Tiffany on Real Property, 3d Ed., § 854, pp. 455-462; and 14 Am.Jur., Covenants, Conditions and Restrictions, §§ 19, 20, pp. 495-498. As discussed in the last mentioned authority (§ 20, p. 496-497):
"The primary test whether the covenant runs with the land or is merely personal is whether it concerns the thing granted and the occupation or enjoyment thereof or is a collateral or a personal covenant not immediately concerning the thing granted. In order that a covenant may run with the land it must have relation to the land or the interest or estate conveyed, and the thing required to be done must be something which touches such land, interest, or estate and the occupation, use, or enjoyment thereof.
* * * * * *
"* * * The question whether a covenant runs with the land does not depend upon its being performed upon the land itself; its performance must touch and concern the land or some right or easement annexed or appurtenant thereto and tend necessarily to enhance its value or render it more convenient and beneficial to the owner or occupant. * * *"
There remains for consideration the question of notice. In disclaiming notice, appellant argues (1) that the deed containing the covenant was not in the chain of title, and (2) that notice which resulted from the existence of tracks crossing the lands of the parties must be limited to notice of an easement or right to use the railroad facilities on appellant's lands, and could not constitute notice of an obligation to maintain such facilities. The appellee argues the contrary, that the covenant was in the grantor's chain of title, relying on the proposition of law that the record is notice to a subsequent purchaser of matters affecting his title which could be discovered by an examination of recorded deeds of his grantor, citing 16 A.L.R. 1013, and McQuade v. Wilcox, 215 Mich. 302, 183 N.W. 771, 16 A.L.R. 997; Lowes v. Carter, 124 Md. 678, 93 A. 216, and a number of other authorities.
On the matter of the effect of notice from the existence of the tracks, appellee argues that such knowledge of the easement compelled investigation and constructively gave notice of the user's rights which due inquiry would divulge. We uphold this argument of appellee, which is well supported by authority. The cases are collected in annotations in 41 A.L.R. 1442, and 74 A.L.R. 1250. Moreover, when it is observed that the deed in question also contained an express reservation favoring the grantor, its successors and assigns, with similar rights for use of the railroad facilities over lands of the grantee, and required the grantee to maintain them,[3] the *802 appellant's contention that the instrument did not affect or relate to the grantor's chain of title is seen to be without merit.
Accordingly, the decree appealed from should be and hereby is
Affirmed.
HORTON and PEARSON, JJ., concur.
NOTES
[1] "The party of the first part, for itself, its successors and assigns, does hereby covenant and agree with the party of the second part, its successors and assigns, as follows:

"1. Party of the first part, its successors and assigns, will keep open railroad facilities running over other lands of the party of the first part in Sections 35 and 36, Township 53 South, Range 40 East, in Dade County, Florida, connecting the railroad now on the lands herein conveyed with the Seaboard All-Florida Railroad, and/or other standard railroads, but the party of the first part, its successors and assigns, shall have the right, upon giving thirty (30) days notice, to change location, or to construct additional railroad tracks, to take over and operate these facilities, and to lease or sell the railroad facilities, including the railroad right-of-way, provided, however, that any such changes do not interfere with the operations of the party of the second part, its successors or assigns, and that adequate railroad facilities shall be provided at all times to the party of the second part, its successors or assigns, at no greater cost than now prevails. It is expressly understood that any such change in the relocation of the railroad facilities will be made so as to connect the railroad to the present railroad located on the lands herein conveyed, or to connect at any point agreeable to the party of the second part, its successors or assigns, not inconsistent with the covenants and agreements herein contained."
[2] The defenses which the court struck from the answer, summarized were: (1) a claimed construction of the covenant as not providing for furnishing and maintenance of the railroad facilities, (2) a contention that there was no covenant running with the land, and (3) a contention of absence of notice.
[3] The deed in question, in addition to the covenants set out and quoted in Note 1, supra, contained the following reservation and covenant:

"Saving and Reserving to the party of the first part, its successors, assigns and tenants, the right, in common with the party of the second part, it successors and assigns, to use the existing standard gauge railroad tracks, railroad facilities and a roadway running across the lands herein conveyed, and any other railroad, railroad facilities, and/or roadway which may hereafter be established or opened in substitution of such existing railroad, railway facilities, and/or roadway, for use by the party of the first part, its successors, assigns and any tenant of the party of the first part, its successors or assigns, who may occupy the lands now owned by the party of the first part in the South Half of Section 31, Township 53 South, Range 41 East, or in Sections 35 or 36, Township 53 South, Range 40 East, of Dade County, Florida.
* * * * *
"The party of the second part, its successors and assigns, shall, in conjunction with the present or any subsequent tenant or grantee of the party of the first part, its successors or assigns using the railroad, railroad facilities, or roadway referred to in the paragraph immediately preceding, as a means of access to lands adjacent and to the East of the lands herein conveyed and embraced in said 4th Revised and Amended plat of Semrocsa, maintain and keep in good repair such railroad, railroad facilities and roadway."