NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


SHANE R. HAYSLIP and LAURA M. HAYSLIP,

        Appellants,

v.

U.S. HOME CORPORATION,

        Appellee.

Case No. 2D17-4372


Opinion filed July 10, 2019.

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Lee County; Alane C. Laboda, Judge.

M. Lee Reeder of Burnett Wilson Reeder, Tampa (withdrew after briefing); David M. Greene and Joshua E. Burnett of Burnett Law, P.A., Tampa (substituted as counsel of record), for Appellants.

David M. Gersten of Gordon Rees Scully Mansukhani LLP, Miami; and Lawrence J. Dougherty, C. David Harper, and Adam R. Alaee of Foley & Lardner LLP, Tampa, for Appellee.


BLACK, Judge.

Shane and Laura Hayslip appeal a nonfinal order granting U.S. Home Corporation's motion to stay the Hayslips' claim for relief under section 553.84, Florida Statutes (2016), of the Florida Building Codes Act and to compel arbitration pursuant to the original special warranty deed. The Hayslips argue that the arbitration provision contained in the original special warranty deed is invalid; alternatively, if the arbitration provision is valid, the Hayslips assert that as subsequent purchasers of the home they are not bound by it because it is not a covenant running with the land but is merely a personal covenant binding only upon the original purchasers of the home. We hold that a valid arbitration agreement exists and that as a restrictive covenant running with the land, the arbitration provision contained in the original special warranty deed is binding upon the Hayslips as subsequent purchasers of the home. Therefore, we affirm the circuit court's order compelling arbitration. As this case presents an issue of first impression in Florida, we certify a question of great public importance.

In 2007, David and Luisa Kennison entered into an agreement with U.S. Home for the purchase of a newly-built home in Lee County. U.S. Home conveyed the home to the Kennisons by special warranty deed, which was recorded in the public records of Lee County. The special warranty deed was executed by a U.S. Home representative in the presence of two witnesses but was not signed by the Kennisons. The special warranty deed contains various covenants, conditions, and restrictions, including a provision requiring arbitration of disputes arising under or related to the home. Specifically, the deed provides, in part, as follows:

> G.     All covenants, conditions and restrictions contained in this Deed are equitable servitudes, perpetual and run with the land including, without limitation, Sections H, I, and J.

. . . .

I.      Grantor and Grantee specifically agree that this transaction involves interstate commerce and that any Dispute . . . shall first be submitted to mediation and, if not settled during mediation, shall thereafter be submitted to binding arbitration as provided by the Federal Arbitration Act . . . and not by or in a court of law or equity.  "Disputes" (whether contract, warranty, tort, statutory or otherwise), shall include, but are not limited to, any and all controversies, disputes or claims (1) arising under, or related to, this Deed, the underlying purchase agreement, the Property, the community in which the Property is located or any dealings between Grantee and Grantor . . . ; (2) arising by virtue of any representations, promises or warranties alleged to have been made by Grantor or Grantor's representative; and (3) relating to personal injury or property damage alleged to have been sustained by Grantee, Grantee's children or other occupants of the Property, or in the community in which the Property is located.  Grantee has accepted this Deed on behalf of his or her children and other occupants of the Property with the intent that all such parties be bound hereby.

Section J further provides, in part, that "Grantee, by acceptance of this Deed, automatically agrees for itself, and its heirs, personal representatives, successors and assigns, to observe and to be bound by all of the terms and conditions set forth in this Deed."

In 2010, the Hayslips purchased the home from the Kennisons.  The 2010 warranty deed, which was not signed by the Hayslips, did not contain any express provisions regarding arbitration but did provide that the conveyance of the home was "[s]ubject to easements, restrictions, reservations and limitations, if any."  In January 2017, the Hayslips filed a lawsuit against U.S. Home, alleging that U.S. Home inadequately and improperly installed the stucco system on the home in violation of the Florida Building Codes Act.  See § 553.84.  U.S. Home moved to stay the court

- 3 -

proceedings and compel arbitration pursuant to the language of the original special warranty deed conveying the home to the Kennisons. Following a hearing, the general magistrate concluded that the arbitration provision in the original special warranty deed is a covenant running with the land and therefore binding on the Hayslips, who were properly noticed of the condition. The general magistrate recommended that the Hayslips' lawsuit be stayed pending mediation and/or arbitration. The circuit court adopted the general magistrate's report and recommendation, and the Hayslips appealed.

It has been repeatedly held that "courts are required to indulge every reasonable presumption in favor of arbitration, recognizing it as a favored means of dispute resolution." Am. Int'l Grp., Inc. v. Cornerstone Buss., Inc., 872 So. 2d 333, 338 (Fla. 2d DCA 2004) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); accord Perdido Key Island Resort Dev., L.L.P. v. Regions Bank, 102 So. 3d 1, 3 (Fla. 1st DCA 2012) ("Florida law favors arbitration, often holding that any doubt regarding the arbitrability of a claim should be resolved in favor of arbitration."). With this general proposition in mind, we turn to the Hayslips' first issue regarding the validity of the arbitration provision contained in the original special warranty deed. To determine whether a claim is subject to arbitration, we "must determine (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Perdido Key Island Resort Dev., L.L.P., 102 So. 3d at 3-4 (citing Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999)). The Hayslips dispute only the existence of a valid arbitration

- 4 -

agreement, arguing that because the original special warranty deed was not signed by the Kennisons it does not reflect their intent to be bound, rendering it invalid.

"[T]he existence of a valid agreement to arbitrate is a question of law, [and] we review the trial court's determination de novo." Lowe v. Nissan of Brandon, Inc., 235 So. 3d 1021, 1024 (Fla. 2d DCA 2018) (alterations in original) (quoting Avatar Props., Inc. v. Greetham, 27 So. 3d 764, 766 (Fla. 2d DCA 2010)). "Absent a valid written agreement to arbitrate, no party may be forced to arbitrate a claim." Id. (citing Seifert, 750 So. 2d at 636). However, neither the Federal Arbitration Act nor the Florida Arbitration Code require an arbitration agreement to be signed to be enforceable. Santos v. Gen. Dynamics Aviation Servs. Corp., 984 So. 2d 658, 660 (Fla. 4th DCA 2008). Rather, a party's conduct can demonstrate intent to be bound by the agreement. Id. at 661. Here, it is undisputed that the Kennisons were on notice of the original special warranty deed's covenants and restrictions, and by taking title to and possession of the home, they acquiesced to the arbitration provision. See Bessemer v. Gersten, 381 So. 2d 1344, 1348 n.6 (Fla. 1980) (noting that by accepting a deed the grantee agrees to fulfill the conditions of the covenant contained therein (quoting 1 R. Boyer, Fla. Real Estate Transactions, § 24.03, at 574 (1977))); cf. Santos, 984 So. 2d at 659, 661 (concluding that Mr. Santos's continued employment with General Dynamics after receipt of the dispute resolution policy—which provided that all employment claims must be submitted to arbitration—sufficiently demonstrated his consent to the arbitration agreement); BDO Seidman, LLP v. Bee, 970 So. 2d 869, 872, 875 (Fla. 4th DCA 2007) (concluding that Mr. Bee's continued employment with BDO Seidman after the implementation of the amended partnership agreement, which mandated arbitration for

all disputes under the agreement, demonstrated his consent to the arbitration agreement). Further, Florida law does not require that the home buyer sign the warranty deed in order to be bound by it. See Bessemer, 381 So. 2d at 1348 n.6 ("In Florida it is standard practice for only the grantor to sign the deed . . . ." (quoting Boyer, supra, at 574)); Taylor v. Fla. E. Coast Ry. Co., 45 So. 574, 578 (Fla. 1907) ("When the grantee accepts a deed and enters into possession of the land conveyed, he is deemed by such acts to have expressly agreed to do what is stipulated in the deed he should do, even though he did not sign the deed." (quoting Silver Springs, O. & G. R. Co. v. Vanness, 34 So. 884, 887-88 (Fla. 1903))). The deed must only be signed by the seller in the presence of two witnesses. See § 689.01, Fla. Stat. (2016) ("No estate or interest of freehold . . . shall be created, made, granted, transferred or released in any other manner than by instrument in writing, signed in the presence of two subscribing witnesses by the party creating, making, granting, conveying, transferring or releasing such estate . . . ."). We therefore find no merit in the Hayslips' first issue on appeal; the language in the original special warranty deed creates a valid arbitration agreement.

The Hayslips next contend that if a valid arbitration agreement exists, it is a personal covenant between U.S. Home and the Kennisons and not a covenant running with land and binding upon them as subsequent purchasers. The Hayslips contend that the arbitration provision does not touch and concern the land, a necessary requirement to be characterized as a covenant running with the land or real covenant.

"Covenants are loosely defined as 'promises in conveyances or other instruments pertaining to real estate' . . . [and] are divided into two categories, real and personal." Palm Beach County v. Cove Club Inv'rs Ltd., 734 So. 2d 379, 382 n.4 (Fla.

1999) (quoting 19 Fla. Jur. 2d Deeds § 168 (1998)).  A real covenant, or covenant running with the land, "differs from a merely personal covenant in that the former concerns the property conveyed and the occupation and enjoyment thereof, whereas the latter covenant is collateral or is not immediately concerned with the property granted."  Hagan v. Sabal Palms, Inc., 186 So. 2d 302, 310 (Fla. 2d DCA 1966) (citations omitted) (quoting Maule Indus., Inc. v. Sheffield Steel Prods., Inc., 105 So. 2d 798, 801 (Fla. 3d DCA 1958)); accord Caulk v. Orange County, 661 So. 2d 932, 933-34 (Fla. 5th DCA 1995).  "A real covenant binds the heirs and assigns of the original covenantor, while a person[al] covenant does not."  Palm Beach County, 734 So. 2d at 382 n.4 (quoting 19 Fla. Jur. 2d Deeds § 174).

> The primary test whether the covenant runs with the land or is merely personal is whether it concerns the thing granted and the occupation or enjoyment thereof or is a collateral or a personal covenant not immediately concerning the thing granted.  In order that a covenant may run with the land it must have relation to the land or the interest or estate conveyed, and the thing required to be done must be something which touches such land, interest, or estate and the occupation, use, or enjoyment thereof.

Hagan, 186 So. 2d at 310 (quoting Maule Indus., Inc., 105 So. 2d at 801); accord Caulk, 661 So. 2d at 934.  Therefore, "to establish a valid and enforceable covenant running with the land . . . , a plaintiff must show (1) the existence of a covenant that touches and involves the land, (2) an intention that the covenant run with the land, and (3) notice of the restriction on the part of the party against whom enforcement is sought."  Winn-Dixie

Stores, Inc. v. Dolgencorp, Inc., 964 So. 2d 261, 265 (Fla. 4th DCA 2007). In this case, the Hayslips have challenged only the first element.[1]

Although no Florida appellate court has considered whether an arbitration provision contained within a deed touches and concerns the land such that it is binding on subsequent purchasers like the Hayslips, we find the following cases to be instructive. In Winn-Dixie Stores, Inc., Winn-Dixie, a tenant in a shopping plaza, sued the landlord and Dolgencorp, Inc., another tenant in the same shopping plaza, based upon a covenant in its recorded lease granting Winn-Dixie the exclusive right to sell groceries. 964 So. 2d at 263. The Fourth District concluded that the grocery exclusive was a covenant that "touched and involved" the land because it "affects the mode of enjoyment of the premises." Id. at 265 (quoting Dunn v. Barton, 16 Fla. 765, 771 (Fla. 1878)). In Dunn, John Dunn assigned a commercial lease to Mary Barton, who agreed not to permit the leased premises to be used as a bar because Mr. Dunn owned the adjoining bar and sought to limit his competition. 16 Fla. at 770. Ms. Barton then

_____

[1]Even had the Hayslips challenged the second and third elements, it is readily apparent that under the facts of this case they would not have prevailed. The intent that the covenant run with the land is evident in the language of the original special warranty deed: "All covenants, conditions and restrictions contained in this Deed are equitable servitudes, perpetual and run with the land including, without limitation, Section[] . . . I, [the arbitration provision] . . . ." Cf. Caulk, 661 So. 2d at 934 ("[N]othing in the deed suggests it was intended to [run with the land]. Rather, the language suggests the opposite."). Moreover, the Hayslips were, at a minimum, on constructive notice of the arbitration provision contained in the recorded original special warranty deed. See Hagan, 186 So. 2d at 311; see also Vetzel v. Brown, 86 So. 2d 138, 140 (Fla. 1956) ("The Vetzels had notice of the restrictions on the use of their property. They had the constructive notice imputed to them by the recordation of the 1947 agreement, and they had 'implied actual notice' because of the typed in statement in their deed (which was on a printed form) that the title was 'subject to easements and restrictions of record.' ").

leased the premises to Annie Hazelton, who opened a bar and restaurant. Id. Mr. Dunn sued both Ms. Barton and Ms. Hazelton to enforce his agreement with Ms. Barton. As indicated by the court in Winn-Dixie, "[t]he supreme court characterized the Dunn/Barton use restriction as a covenant which ran with the land, because it affected 'the mode of enjoyment of the premises.' " 964 So. 2d at 264 (quoting Dunn, 16 Fla. at 771). "[T]he covenant was enforceable against Hazelton, who, as sublessee, was 'subject to the covenants running with the land in the hands of her lessor.' " Id. (quoting Dunn, 16 Fla. at 772).

Much like the covenants in Winn-Dixie and Dunn, the performance of the covenant here affects "the occupation and enjoyment" of the home, see Hagan, 186 So. 2d at 310, as it dictates the means by which the Hayslips must seek to rectify building defects related to the home. Not only is the covenant triggered when an apparent defect in the home is realized and the homeowners seek recourse from the builder, but the outcome of the arbitration proceeding necessarily impacts the home as well. Thus, the arbitration provision touches and concerns the property itself. Additionally, "[i]f the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to . . . render[] [the property] more convenient and beneficial to the owner, it is a covenant running with the land." Hagan, 186 So. 2d at 310 (quoting Maule Indus., Inc., 105 So. 2d at 801). In Florida the legislature has deemed alternative dispute resolution to be a beneficial and effective mechanism by which to resolve construction defect disputes. § 558.001, Fla. Stat. (2016); accord Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co., 232 So. 3d 273, 278 (Fla. 2017); see also § 558.002(3) (" 'Claimant' means a property

- 9 -

owner, including a subsequent purchaser . . ., who asserts a claim for damages against a contractor . . . concerning a construction defect . . . ."); § 558.002(5)(b) (" 'Construction defect' means a deficiency in, or a deficiency arising out of, the design, specifications, surveying, planning, supervision, observation of construction, or construction, repair, alteration, or remodeling of real property resulting from . . . [a] violation of the applicable codes in effect at the time of construction or remodeling which gives rise to a cause of action pursuant to s. 553.84.").[2]

The Hayslips rely on Caulk in reaching the contrary conclusion; Caulk, however, is distinguishable. In that case, the deed of conveyance reflected the grantor's reservation of the right to condemnation proceeds arising from the taking of a portion of the property conveyed. 661 So. 2d at 933. A few years after a subsequent purchaser acquired the property, Orange County filed suit seeking condemnation of a portion of the property. Id. The grantor learned of the pending condemnation proceeding and sought to intervene, claiming an interest in the proceeds based on the original deed. Id. The language of the covenant did not express an intent that it run with the land or state that it was binding on heirs and assigns. Id. at 934. Importantly, the Fifth District concluded that the covenant was "incapable of running with the land" because it had "no effect whatever on the land" and only " 'touche[d]' and 'concern[ed]' .

---

[2]We note that the Hayslips did not advance in the initial brief any policy arguments against arbitration or claim that the arbitration provision is unconscionable. See Waterview Towers Condo. Ass'n v. City of West Palm Beach, 232 So. 3d 401, 409 (Fla. 4th DCA 2017) ("[R]estrictive covenants are enforced so long as they are not contrary to public policy, do not contravene any statutory or constitutional provisions, and so long as the intention is clear and the restraint is within reasonable bounds." (quoting Hagan, 186 So. 2d at 308-09)); cf. Anderson v. Taylor Morrison of Fla., Inc., 223 So. 3d 1088, 1089 (Fla. 2d DCA 2017).

- 10 -

. . intangible personal property." Id.  While the covenant at issue in Caulk was triggered by the taking of the land, it otherwise did not concern the land but rather the money flowing from its taking; it was merely a promise between the grantor and original grantee.  See id.; see also Suniland Assocs. v. Wilbenka, Inc., 656 So. 2d 1356, 1358-59 (Fla. 3d DCA 1995) (holding "that an agreement to assign rents and profits creates no interest in the property itself" and therefore is not a covenant running with the land).[3]

As U.S. Homes points out, several other state and federal courts have concluded that arbitration provisions such as the one in this case were real covenants that touch and concern the land.  In J&JB Timberlands, LLC v. Woolsey Energy II, LLC, No. 14-cv-1318-SMY-RJD, 2017 WL 396174, at *1-2 (S.D. Ill. Jan. 30, 2017), the surface of the property at issue—a "pristine floodplain forest"—was conveyed by warranty deed to William E. Puckett while reserving the mineral rights to the property.  The reservation in the deed provided "that the Grantor shall pay for damages caused by mineral extraction activity, and that if no agreement on the amount of damages is reached within ninety (90) days, 'the amount of damage shall be determined by arbitration.' "  Id. at *1.  Mr. Puckett conveyed the surface property to J&JB Timberlands, LLC (J&JB), subject to the reservation in the prior deed.  Id. at *2.  Global Geophysical Services conducted a seismic survey on the property at the direction of the Woolsey

_____

[3]We acknowledge that this court has previously recognized that arbitration provisions are generally characterized as personal covenants; importantly, however, our recognition and application of that general proposition was within a completely different context than this case.  See Am. Int'l Grp., Inc., 872 So. 2d at 336 (quoting Federated Title Insurers, Inc. v. Ward, 538 So. 2d 890, 891 (Fla. 4th DCA 1989)).  Unlike the personal contract at issue in American International Group, which could not bind or be enforced by a nonsignatory to the contract, the particular language of the arbitration provision within the original special warranty deed in this case establishes that it is a covenant running with the land and binding upon subsequent purchasers of the home.

defendants, resulting in, according to J&JB, "extensive, measurable, long-term habitat loss and tree and plant damage . . . Rutting and other damage to the forest floor which will require years to restore." Id. at *1. J&JB filed suit, and the defendants moved to stay the court proceedings pending arbitration pursuant to the arbitration provision in the deed. Id. J&JB asserted that it was not bound by the arbitration provision because it was a personal covenant that did not run with the land. Id. at *3. Under Illinois law, "[a] covenant touches and concerns the land if it affects the use, value, and enjoyment of the property." Id. at *4 (quoting Bank of Am., N.A. v. Cannonball LLC, 12 N.E.3d 841, 848 (Ill. App. Ct. 2014)). The federal court concluded that "the reservations provision which includes a covenant to pay for damages to the surface of the land obviously affects the use, value and enjoyment of the land and, therefore, touches and concerns the land." Id.

Similarly, in Baker v. Conoco Pipeline Co., 280 F. Supp. 2d 1285, 1292, 1294 (N.D. Okla. 2003), a previous property owner granted an easement to Ajax Pipeline Company to lay petroleum pipelines across the property. The Bakers subsequently acquired the property, and Conoco Pipeline Company became the successor to Ajax's easement rights. Id. at 1291-92, 1295. As part of the operation of its pipeline, Conoco performed "easement clearing activities" on the land over the pipeline. Id. at 1292. As a result, the Bakers sued Conoco claiming that it damaged trees and other vegetation on the property. Id. Conoco moved to stay the court proceedings and compel arbitration based on the arbitration provision in the recorded easement on the property. Id. The arbitration provision in the easement set forth a

procedure for dealing with "damage to crops, fences and timber, which may arise from laying, maintaining, operating or removing such pipe lines":

> Said damage, if not mutually agreed upon, to be ascertained and determined by three disinterested persons; one to be appointed by the [Grantor], his heirs or assigns; one by the Grantee, its successors or assigns, and the third by the two persons aforesaid, and the award of such three persons, or any two of them, shall be final and conclusive.

Id. at 1292.  The Bakers argued that the arbitration agreement was a personal covenant binding only on the original parties to the agreement.  Id. at 1295.  The federal court ruled in favor of Conoco, determining that the arbitration provision "satisfies the requirements of a covenant running with the land" because it "affects the method for recovery of damage to crops, fences, and timber, and thus 'touches and concerns the land.' "  Id. at 1296.  In other words, because it provided the exclusive procedure for resolving disputes concerning damage to the property it "clearly 'touch[ed] and concern[ed]' the real property."  Id. at 1298.

Finally, in Kelly v. Tri-Cities Broadcasting, Inc., 195 Cal. Rptr. 303, 304 (Cal. Ct. App. 1983), Tri-Cities Broadcasting, Inc. (Tri-Cities), purchased a radio station from Far West Broadcasting Corp. (Far West).  In conjunction with the purchase of the radio station, Tri-Cities was assigned the lease to the land upon which the station operated.  Id.  By the terms of the lease, Tri-Cities was required to provide the lessor with free radio time in lieu of rent payments, and any disputes arising out of the lease were to be arbitrated.  Id. at 305.  Noting that the case law was sparse regarding the nature of a covenant to submit to arbitration and relying on Abbott v. Bob's U-Drive, 352 P.2d 598 (Or. 1960), the California appellate court concluded that the covenant to arbitrate ran with the land:

"In the case at bar the covenant to arbitrate is invoked to require the lessee to submit to arbitration a matter relating to rental payments under the lease. A covenant to pay rent clearly 'touches and concerns' the land. It would seem to follow that a covenant to arbitrate a question with respect to rental payments should also be required as relating to the property interests of the original covenanting parties as lessor and lessee. . . . '[T]here would seem to be no reason for applying the rules of touching and concerning in an overtechnical manner, which is unreal from the standpoint of the parties themselves.' "

The Oregon Supreme Court concluded a covenant to arbitrate was a covenant running with the land. We agree and would treat it as similar to a covenant to pay rent upon which it rests for the conclusion that such a covenant "touches and concerns the land."

Kelly, 195 Cal. Rptr. at 310-11 (quoting Abbott, 352 P.2d at 604).

In this case, the circuit court properly characterized the arbitration provision in the original special warranty deed mandating mediation and/or arbitration as a covenant running with the land, binding upon the Hayslips as subsequent purchasers of the home. However, because this case presents an issue of first impression with potentially wide-ranging effect, we certify the following question as one of great public importance:

DOES A MANDATORY ARBITRATION PROVISION CONTAINED WITHIN A RESIDENTIAL WARRANTY DEED CONVEYING RESIDENTIAL PROPERTY FROM HOME BUILDER TO ORIGINAL PURCHASER RUN WITH THE LAND SUCH THAT IT IS BINDING ON SUBSEQUENT PURCHASERS WHERE THE INTENDED NATURE OF THE PROVISION IS CLEAR AND THE PARTY AGAINST WHOM ENFORCEMENT IS SOUGHT WAS ON NOTICE OF THE PROVISION?

Affirmed; question certified.

VILLANTI and ATKINSON, JJ., Concur.