# Third District Court of Appeal

## State of Florida

Opinion filed February 1, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-933
Lower Tribunal No. 18-20081
_____

**The Residences at the Bath Club Condominium Association, Inc., etc., et al.,**
Appellants,

vs.

**Bath Club Entertainment, LLC, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., and Alan J. Kluger, Steve I. Silverman and Becky N. Saka; Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., and Eugene E. Stearns and Albert D. Lichy, for appellants.

Armstrong Teasdale LLP, and Glen H. Waldman, Michael A. Sayre and Marlon Weiss, for appellee.

Before EMAS, HENDON and MILLER, JJ.

HENDON, J.

The Residences at the Bath Club Condominium Association, Inc. ("Condominium Association"), and The Residences at the Bath Club Maintenance Association, Inc. ("MXA") (collectively, "Appellants") appeal from the amended final judgment. We affirm.

Facts

Appellee Bath Club Entertainment ("BCE") owns The Bath Club ("Bath Club"), an historic social club situated on the beach in Miami Beach. Appellant Condominium Association operates The Residences at the Bath Club Spa, the property adjacent to the Bath Club, while co-Appellant MXA maintains the common areas shared by BCE and the Condominium Association. BCE's Bath Club property, also known as the "Easement Parcel," includes The Bath Club, cabanas, a garage, and a portion of the pool deck where food and beverages are served.

In 2010, the parties entered into a comprehensive settlement agreement ("Settlement Agreement") to conclude over three years of litigation involving the parties' respective rights and responsibilities related to The Bath Club property. In the Settlement Agreement, BCE conveyed ownership of certain common elements to MXA, such as the pool, spa, tennis courts, and landscaped areas. BCE also agreed to give

2

condominium owners conditional use of certain Bath Club amenities.  In exchange, MXA recognized BCE's (a/k/a "Easement Parcel Owner" or "EPO") right to maintain ownership of those upland areas necessary to maintain its beach concession licenses. Paragraph 5 of the Settlement Agreement, provides, in relevant part:

> Within 20 business days . . . <u>BCE shall tender to MXA a special warranty deed . . . to the following areas: the pool (but not the adjacent pool deck and outdoor dining areas), the spa, tennis courts and landscaped areas</u>, as the sole Common Areas under the Governing Documents . . . and otherwise in the manner provided in Section 3.3 of the Easement Agreement. <u>Nothing  herein shall impair the Easement Parcel Owner's right to provide food and beverage and other services</u>, or to conduct other activities, to the full extent provided in the Governing Documents. Notwithstanding anything herein to the contrary, <u>BCE may maintain ownership rights of any "upland" areas that may be needed to obtain any licenses that may be necessary or desirable in order to enable it, and its successors and assigns, to provide beach-related services to the Easement Parcel and the surrounding beach areas.</u> At the Easement Parcel Owner's request, <u>Condominium and MXA shall join in or consent, as required, in any applications or permits that may be required for any such licenses</u>.

(Emphasis added).

Subsequently, in 2011, the Appellants asked BCE to permit them to provide their own concessions on BCE's beachfront property.  In the written agreement, BCE agreed but reserved the right to revoke its approval with a 14-day notice to the Appellants.  BCE then sought to fulfil its bargain under Paragraph 5 of the Settlement Agreement and offered a special warranty

3

deed to the common areas it agreed to transfer to MXA. The Appellants rejected the deed, taking the position that BCE was required to deed the entire pool deck and mezzanine areas as well. This issue, among others, went before an arbitration panel in 2013. In an omnibus order on motions for summary disposition, the arbitration panel decided the matter against MXA, and relevant to this appeal, directed BCE to draft a warranty deed that conformed with the Settlement Agreement and Paragraph 5's plain language. After a final hearing, the arbitration panel issued the arbitral award which provided that "BCE fulfilled its conveyance obligations" through its deed tender and concluded that MXA's demand for additional property and refusal to accept the deed was not justified. Pursuant to section 682.15, Florida Statutes, the arbitral award was confirmed in a final judgment rendered by the trial court in May 2014. The parties jointly drafted the February 2013 special warranty deed.[1]

From 2013 through 2017, the Appellants continued to annually request permission from BCE to provide their own concessions, and BCE continued to grant permission. In 2018, BCE concluded that it was too

---

[1] In February 2014, the Appellants filed their first motion to enforce compliance with the 2013 Arbitral Award. Residences at Bath Club v. Bath Club Ent., LLC, 166 So. 3d 910, 912 (Fla. 3d DCA 2015) (affirming in part and reversing in part the trial court's order denying Appellants' Motion to Enforce Arbitration Award and compelling arbitration of two claims raised in Appellants' Motion to Enforce).

expensive to allow the Appellants to coattail on BCE's beach concession license free of charge. BCE notified the Appellants of this change in their relationship and invoked the 14-day notice of revocation, giving Appellants the option of continuing to run their beachfront concession for a monthly fee or pay BCE to run it for them. Subsequently, and without notice to BCE, the Appellants applied to the City of Miami Beach for its own beachfront concession license to operate at The Bath Club, asserting that it now owned the upland areas necessary to do so, in contravention of the Settlement Agreement. Appellants based their argument on BCE's conveyance of the special warranty deed without having reserved to itself the upland area necessary to maintain its license. The City of Miami Beach rejected the application, citing the Settlement Agreement's clear language providing that BCE, as well as its successors and assigns, retained concession privileges and ownership rights of any upland areas needed to obtain licenses. Appellants applied again, and the City denied the application again,[2] and rejected MXA's appeal.

---

[2] The City responded, in pertinent part:

> The City relies on the ownership records published in the Miami-Dade County Property Appraiser's database. You submitted an application for 5959 Collins Avenue, which the Property Appraiser identifies with tax folio no. 02-3214-030-0001. This folio is not associated with the property immediately westward of the public beach. On the contrary,

5

The Appellants then approached the Miami-Dade County Property Appraiser and succeeded in having that office change the folio number of the parcel adjacent to the beach area then owned by BCE to MXA. Appellant MXA then re-applied to the City of Miami Beach with the new folio number for a concession license. BCE learned of the Appellants' application and prior to the City's issuance of a license, petitioned the circuit court for injunctive relief. The trial court granted in part BCE's motion for a temporary injunction without notice. The trial court found that BCE demonstrated a substantial likelihood of success on the merits of its claim for injunctive relief. With respect to the first two elements - the likelihood of irreparable harm and the inadequacy of a remedy at law - the trial court found that MXA violated a restrictive covenant and thus no showing of irreparable harm or inadequacy of damages was required. The trial court also determined that the public interest was served by issuance of the temporary injunction.

At the November 17, 2020 bench trial, the trial court heard testimony from witnesses and received exhibits into evidence. After considering the parties' arguments, the court concluded that Paragraph 5 of the Settlement

---

the County Property Appraiser lists Bath Club Entertainment, LLC ("BCE") as the property-owner of 5937 Collins Avenue.

Agreement "made it abundantly clear that, despite any obligation to the contrary, BCE was entitled to maintain ownership of the upland areas" and also "imposed affirmatively on MXA an obligation to consent and join in any permits . . . that may be required for such licenses, and to do everything it could to work cooperatively to finalize a legal description . . . contemplated by Paragraph 5." The trial court concluded "that BCE has an ongoing right to maintain ownership of whatever upland areas are needed to obtain its licenses that are necessary to operate its facilities. And to the extent that the 2013 Special Warranty Deed did not reserve that sliver of upland property, that was by mistake . . . ." The Appellants sought to vacate the order, which motion the trial court denied.

The trial court held a March 8, 2021, evidentiary hearing to determine how to reform the special warranty deed to conform to the Settlement Agreement. The trial court concluded that, based on the evidence presented, BCE was entitled to a 400-foot strip one inch wide in order to maintain its beach concession license from the City, while the Appellants would receive the remaining 138.62 linear feet. The parties agreed that BCE was entitled to as much of the property "as needed" in order to provide its services, and no more. The trial court entered its 26-page amended final judgment, which found, in pertinent part:

7

Paragraph 5 of the Settlement Agreement allows BCE to retain the land necessary to provide its beach related services. It does not say that under no circumstances shall the condominium owners receive less than a certain amount of beach front property.

The way the Settlement Agreement is structured, the Associations could have ended up with no linear footage on the beach. That is the agreement they bargained for. It is not the Court's prerogative to rewrite the Settlement Agreement.

To the extent that the 2013 special warranty deed did not reserve that sliver of upland property, that was by mistake . . .

However, based upon the current circumstances and the evidence as it currently sits, this Court finds as a matter of fact that BCE pursuant to Paragraph 5 of the Settlement Agreement is entitled to 400 lineal feet (one inch in width); and that there will be a corrected deed, re-conveying that dimension of the property back to BCE so that it can provide beach related services to its members.

The Appellants appealed.

Discussion

The Appellants raise six issues on appeal, none of which provide a legal basis for reversal. The Appellants first contend that the trial court erred by interpreting Paragraph 5 of the Settlement Agreement to mean that BCE has, in perpetuity, ownership rights in the upland area necessary for it to keep its license. We review de novo the trial court's interpretation of a contract, including whether the contract or one of its terms is ambiguous. Real Est. Value Co. v. Carnival Corp., 92 So. 3d 255, 260 (Fla. 3d DCA

8

2012). We begin by examining the plain language of the contract for evidence of the parties' intent. Aleman v. Gervas, 314 So. 3d 350, 352 (Fla. 3d DCA 2020); Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier, 620 So. 2d 786, 788 (Fla. 4th DCA 1993) (holding the intentions of the parties govern a contract's construction and interpretation, and the best evidence of intent is the contract's plain language). "To ascertain the intention of the parties to a contract, the trial court must examine the whole instrument, not just particular portions, and reach an interpretation consistent with reason, probability, and the practical aspects of the transaction between the parties." Bucacci v. Boutin, 933 So. 2d 580, 585 (Fla. 3d DCA 2006) (quoting Macaw v. Gross, 452 So. 2d 1126 (Fla. 3d DCA 1984)). "[A] court may not interpret a contract so as to render a portion of its language meaningless or useless." TRG Columbus Dev. Venture, Ltd. v. Sifontes, 163 So. 3d 548, 552 (Fla. 3d DCA 2015) (citing Moore v. State Farm Mut. Auto. Ins. Co., 916 So. 2d 871, 877 (Fla. 2d DCA 2006)).

In examining the parties' intent, we note that in 2010, the Appellants entered into a Settlement Agreement with the property developer to conclude over three years of litigation involving the parties' respective rights and responsibilities related to the Bath Club Property. The plain

9

language of Paragraph 5 of the Settlement Agreement indicates the clear intent of the parties that,

> [n]othing herein shall impair the Easement Parcel Owner's right [to conduct its business] . . . to the full extent provided in the Governing Documents. . . . BCE may maintain ownership rights of any "upland" areas that may be needed to obtain any licenses that may be necessary . . . to enable it, and its successors and assigns, to provide beach-related services to the Easement Parcel and the surrounding beach areas.

BCE's rights to the upland property were further retained based on the plain language of the subsequent warranty deed, which explicitly states that "[t]his conveyance evidences a transfer of title . . . pursuant to Paragraph 5 of that certain Settlement Agreement dated December 2, 2010, and as required by [the Arbitration Order]." Indeed, for several years after BCE conveyed the mutually agreed-upon special warranty deed, the Associations recognized BCE as the upland owner and asked BCE for authorization to use BCE's upland property in yearly applications to the City of Miami Beach. See Iniguez v. Am. Hotel Reg. Co., 820 So. 2d 953, 956 (Fla. 3d DCA 2002) (concluding the contract was unambiguous, and in addition, that the "surrounding circumstances and the conduct of the parties through their course of dealings clearly support[ed]" contractual intent). We find the Settlement Agreement's language to be unambiguous, and conclude that the record discloses no evidence that BCE was divested

10

of its property rights by its post-Settlement Agreement behavior or by the special warranty deed. The intent of the parties, amply demonstrated in the record, supports the trial court's conclusion that the unambiguous language of Paragraph 5 provides that BCE retains its upland area ownership rights.

It follows that, finding the Settlement Agreement clear on the parties' intent regarding BCE's property rights, to the extent the survey attached to the 2013 special warranty deed did not reserve a sliver of upland property necessary to retain BCE's license, that was by mutual mistake. The record is clear that throughout the arbitration and crafting of the special warranty deed, neither party intended that the special warranty deed should divest BCE of the right to operate its beach concessions or the upland property necessary to do so. Certainly, the Appellants' conduct subsequent to the grant of the special warranty deed acknowledged BCE's right to the upland property. The record suggests that only after BCE notified the Appellants that it intended to charge them for the sublicense or terminate that privilege, did the Appellants seek to challenge BCE's right to the upland beach concession property.

Thus, the lower court's finding of mutual mistake and its adjustment of the survey to comport with the Settlement Agreement "[is] entitled to a

11

presumption of correctness" and "[s]uch findings are reviewed for clear error and sufficient evidence." Losner v. HSBC Bank USA, N.A., 190 So. 3d 160, 161 (Fla. 4th DCA 2016); Sugar v. Guardianship of Stern, 109 So. 3d 809, 810 (Fla. 3d DCA 2013) (holding a decision to impose reformation as an equitable remedy is reviewed for abuse of discretion). The trial court appropriately reformed the survey attached to the special warranty deed to adjust the conveyance of land abutting the beach to accord with the Settlement Agreement in order to allow BCE to continue to obtain its concession licensing. "A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument." Sierra v. Albers, 540 So. 2d 907, 907–08 (Fla. 2d DCA 1989), (citing Providence Square Ass'n, Inc. v. Biancardi, 507 So. 2d 1366, 1369 (Fla.1987)). The foregoing "principle is applicable to instruments of conveyance of real property as well as to contracts." Id.

In a related issue, the Appellants contend that the trial court's subsequent apportionment of the upland area is not supported by competent, substantial evidence. The trial court's division of the upland area as part of the deed reformation is an equitable decision subject to the abuse of discretion standard. Sugar, 109 So. 2d at 810. That discretion,

12

however, is circumscribed by competent, substantial evidence. See, e.g., Fernandez v. Fernandez, 314 So. 3d 543 (Fla. 3d DCA 2020). We find no abuse of discretion, and find competent, substantial evidence in the record showing the trial court's division of the upland area comports with the mandate of Paragraph 5 of the Settlement Agreement, i.e., that BCE maintains ownership rights of any upland area necessary to enable it and its successors and assigns to provide beach concession services to the easement parcel.

The Appellants next contend that the trial court erred by granting BCE permanent injunctive relief. We disagree. We review the trial court's imposition of a permanent injunction for abuse of discretion. Weisberg v. Albert, 123 So. 3d 663, 664 (Fla. 4th DCA 2013). "But the question of whether the evidence is legally sufficient to justify imposing an injunction is a question of law" subject to the de novo standard. Krapacs v. Bacchus, 301 So. 3d 976, 978 (Fla. 4th DCA 2020).

To obtain a permanent injunction, a petitioner must "establish a clear legal right, an inadequate remedy at law and that irreparable harm will arise absent injunctive relief." Hollywood Towers Condo. Ass'n, Inc. v. Hampton, 40 So. 3d 784, 786 (Fla. 4th DCA 2010) (quoting K.W. Brown & Co. v. McCutchen, 819 So. 2d 977, 979 (Fla. 4th DCA 2002)). BCE established a

clear legal right to the upland areas necessary to continue its licensure and business.  Further, the trial court did not abuse its discretion by interpreting Paragraph 5 as containing a restrictive covenant, the violation of which satisfies the irreparable harm element.  Chick-Fil-A, Inc. v. CFT Dev., LLC, 652 F. Supp. 2d 1252, 1263 (M.D. Fla. 2009) ("Under Florida law, where a party seeks an injunction to prevent the violation of a restrictive covenant, the party need not allege or show irreparable injury.").  The Governing Documents were expressly modified by the  Settlement Agreement, which enshrined BCE's property interests in the upland area – meeting the definition of a covenant that runs with land. See Hayslip v. U.S. Home Corp., 336 So. 3d 207, 209 (Fla. 2022) ("A covenant running with the land is defined as one concerning the property conveyed and the occupation and enjoyment thereof.") (quoting Maule Indus., Inc. v. Sheffield Steel Prods., Inc., 105 So. 2d 798, 801 (Fla. 3d DCA 1958)). "If the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner, it is a covenant running with the land." Maule, 105 So. 2d at 801. Although violation of a restrictive covenant serves to fulfill the irreparable harm element of injunction, the record additionally supports the trial court's

14

conclusion that the Appellants' attempted stealth acquisition of BCE's property rights (which included the physical property and BCE's ability to keep its concession license) would cause injury by, essentially, putting BCE out of its longstanding beach concession business.

With that in mind, injunctive relief was appropriate without proof of irreparable injury or a showing that a judgment for damages would be inadequate. "The value of a restrictive covenant . . . is often difficult to quantify and may be impossible to replace." Autozone Stores, Inc. v. Ne. Plaza Venture, LLC., 934 So. 2d 670, 673 (Fla. 2d DCA 2006) (citing Restatement (Third) of Prop.: Servitudes § 8.3 cmt. b (2000)); see also Velickovich v. Ricci, 391 So. 2d 258, 259 (Fla. 4th DCA 1980) ("Because of the unique nature of each piece of real property, violations of restrictive covenants cannot be easily remedied by money damages."). Accordingly, we affirm the imposition of the injunction which provides, consistent with the Settlement Agreement, that BCE has the right in perpetuity to provide beach-related services at its Bath Club property and the right to retain any upland areas necessary to accomplish those services.

Finally, the trial court found that the Appellants had not met their burden on any of their fifteen asserted affirmative defenses, and we decline to disturb that finding.  Accordingly, we affirm the final amended judgment.

15

Affirmed.